421 A.2d 383

**COMMONWEALTH of Pennsylvania,**

v.

**Keith BENSON, Appellant.**

Superior Court of Pennsylvania.

Argued June 6, 1979.

Filed July 25, 1980.

Petition for Allowance of Appeal Denied Dec. 10, 1980.

24

Richard J. Orloski, Allentown, for appellant.

Scott Oberholtzer, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before PRICE, GATES and DOWLING, JJ.*

PRICE, Judge:

Appellant was tried before a jury on October 19, 1977, and found guilty of operating a motor vehicle under the influence of intoxicating liquor.[1] He filed timely motions in arrest of judgment and for a new trial which were denied by the court en banc. He takes this appeal alleging that the suppression court erred in failing to grant his motion to suppress evidence and that he was denied a fair trial by numerous instances of trial error. Finding an absence of

---

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by special designation.

1. 75 Pa.C.S. § 3731.

merit in these contentions, we affirm the judgment of sentence.

The following facts were developed at trial. At approximately 12:30 a. m. on July 14, 1977, appellant was driving home from visiting friends with whom he had consumed several beers. During the journey, his vehicle crossed into the oncoming lane of traffic and collided with several parked vehicles at the side of the street. Hearing the crash, a neighbor, Roger F. Besecker, immediately rushed from his house and observed appellant's car resting against another car and appellant sitting in the driver's seat. Within the next several moments, and subsequent to appellant's departure from his car, numerous bystanders arrived at the scene of the accident.

Officer Robert Webre was summoned to the scene where he interviewed some of the onlookers and recorded several names. The officer observed that appellant, who had been moving about the crowd, was disheveled in appearance and staggering, and had noticeably bloodshot eyes. The officer escorted appellant to the police cruiser to obtain his description of the circumstances of the collision for the accident report, and sat with him in the front seat. During the five or ten minutes they were in the car, the officer noticed that appellant mumbled and that there was a definite odor of alcohol. Both appellant and the officer then exited the car; the officer proceeded to assist the tow truck driver to remove appellant's car and appellant was left milling about the area. Once the wreckage was cleared, the officer placed appellant under arrest and told him to get into the back of the police cruiser. As the officer pulled away from the curb, he read appellant his *Miranda* rights from a card.

Officer Webre drove appellant to the police station where he received a physical examination and performed some physical coordination tests. At approximately 1:35 a. m., appellant consented to and was given a Mobat Sober–Meter

test.[2] The results of this test showed a reading of .12 per cent alcohol by weight in the blood.

Appellant challenges the legality of his arrest claiming that it was made without probable cause and that all evidence resulting therefrom must be suppressed. He contends that the arrest occurred when he initially entered the police car and was seated in the front to discuss the accident and that the court erred in finding the arrest occurred at a later time. We disagree.

■ The test for the occurrence of an arrest has often been defined as the happening of any act that indicates an intention to take the individual into custody and subjects him to the actual control and will of the person making the arrest. *Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976); *Commonwealth v. Allessie*, 267 Pa.Super. 334, 406 A.2d 1068 (1979). An arrest may thus be effectuated without the actual use of force and without a formal statement of arrest. *Commonwealth v. Daniels*, 455 Pa. 552, 317 A.2d 237 (1974). The question is viewed in light of the reasonable impression conveyed to the person subjected to the seizure rather than in terms of the subjective view of the police officer. *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974).

■ The instant facts reveal that no act indicating an intent to take appellant into custody or actually subjecting him to the officer's control and will occurred until appellant was formally placed under arrest and seated in the back of the patrol car. Prior to that time, appellant was apparently cooperative in filling out the accident report and willing to discuss the incident. The officer engaged in a reasonable course to separate appellant from the commotion so he could investigate the accident. The lack of control exercised by the police officer is particularly evident because the officer left appellant alone at the car without any instructions to

2. The Mobat Sober--Meter, commonly known as the balloon test, is a device used to collect a breath sample for lab analysis to determine alcoholic content of the blood.

stay there. *Cf. Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980) (defendant told to wait at scene of crime had a reasonable belief that his freedom had been restricted). Appellant was entirely free to leave and, in fact, did wander around the area.

Clearly, the arrest occurred when the officer later approached appellant and formally placed him under arrest. Although the Commonwealth argues that probable cause for an arrest was present at the time appellant first entered the patrol car, we find this conclusion even more firmly established at the time he was placed in the back of the car. While appellant's stumbling walk and mumbled speech could have been consistent with possible injury from the accident, the information gained by the officer while appellant was filling out the accident report—the odor of alcohol on appellant's breath and the circumstances of the accident which corroborated the other evidence of driving while intoxicated—established strong probable cause to believe that he was driving while under the influence of alcohol. *Commonwealth v. Funk*, 254 Pa.Super. 233, 385 A.2d 995 (1978); *Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977).

Since we conclude that appellant's arrest was grounded upon probable cause, the evidence gathered as a result thereof, including the results of the coordination tests and the reading from the Mobat Sober–Meter test, was not the fruit of an unlawful arrest. Appellant contends, however, that the lack of adequate *Miranda* warnings renders the results of these tests inadmissible despite the legality of the arrest. This argument ignores the fundamental distinction between compelling the production of real or physical evidence and compelling testimonial or communicative evidence. The former is covered by the protection of the fourth amendment and only the latter is within the cover of the fifth amendment privilege against self incrimination, which requires that *Miranda* warnings be given informing that one cannot be compelled to be a witness against one's self. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18

L.Ed.2d 1149 (1967); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Requiring a driver to perform physical tests or to take a breath analysis test does not violate the privilege against self incrimination because the evidence procured is of a physical nature rather than testimonial, and therefore, no *Miranda* warnings are required.[3] *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 389 A.2d 1113 (1978); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974); *Commonwealth v. Rutan*, 229 Pa.Super. 400, 323 A.2d 730 (1974).

Appellant's final attack upon the admissibility of the results of the Mobat Sober–Meter test concerns the lack, at the time of testing and trial, of regulations by the Department of Health approving the use of the Mobat Sober–Meter as required by the Motor Vehicle Code of June 17, 1976, 75 Pa.C.S. § 1547 (effective July 1, 1977), commonly known as the implied consent law. This statute provides, in pertinent part:

> "(a) General rule.–Any person who operates a motor vehicle in this Commonwealth shall be deemed to have given consent to a chemical test of breath or blood for the purpose of determining the alcoholic content of blood if a police officer shall have reasonable grounds to believe the person to have been driving a motor vehicle while under the influence of alcohol. *The test shall be administered by qualified personnel and with equipment approved by the*

---

**3.** We also note that the record clearly indicates that appellant was informed of his *Miranda* rights prior to being transported to the police station, and we reject appellant's contention that this testimony utterly lacked credibility. Likewise, we reject his contention that the Commonwealth admitted the failure to provide *Miranda* warnings or receive a waiver by its response "Denied" to these allegations in appellant's motion to suppress. Clearly, such response answered the averments and was sufficient to prevent them from being admitted against the Commonwealth as was provided in former Pa.R. Crim.P. 308(a). (The rule has subsequently been amended to provide that the failure to answer will not constitute an admission of well-pleaded facts unless an answer is ordered by the court). *Commonwealth v. Eller*, 232 Pa.Super. 99, 332 A.2d 507 (1974), in which the Commonwealth admittedly did not answer upon its mistaken determination that the averment was a conclusion of law that required no answer, is inapplicable.

*department.* Qualified personnel means a physician or a technician acting under the physician's direction or a police officer who has fulfilled the training requirements in the use of such equipment in a training program approved by the department.

. . . . .

(c) Test results admissible in evidence.–In any summary proceeding or criminal proceeding in which the defendant is charged with driving a motor vehicle while under the influence of alcohol, the amount of alcohol in the defendant's blood, as shown by a chemical analysis of his breath or blood, which analysis was conducted with *equipment of a type approved by the Department of Health* and operated by qualified personnel, shall be admissible in evidence." (emphasis added).

It is important to notice that section 1547(a) dealing with the actual administration of the test calls for approval by the "department", which term is defined in 75 Pa.C.S. § 102 to mean the Department of Transportation, while section 1547(c) dealing with the receipt of the test results into evidence requires approval by the Department of Health.

Appellant first raised the inadmissibility of the Mobat Sober–Meter results in his motion to suppress claiming that the police officer "[f]ailed to administer the sobermeter test in accordance with the requirements of the statute." At argument during the suppression hearing, appellant's counsel argued only that the *Secretary of Transportation* had not enacted regulations. (N. T. Suppression Hearing at 29–30). Thus, his argument was directed solely to meeting the requirements of section 1547(a). Contrary to appellant's statements at the hearing, the Secretary of Transportation had indeed promulgated regulations approving the use of the Mobat Sober–Meter for testing blood alcohol, 7 Pa.Bulletin 1832–33, and these regulations were filed July 1, 1977, approximately two weeks before the date of appellant's testing on July 14, 1977. Thus, the test was administered with approved equipment in accordance with the statute, and the request for suppression was properly denied.

Appellant in his post–trial motion for a new trial apparently raises for the first time his claim that the test results should have been suppressed because the *Secretary of Health* had not yet enacted regulations approving the Mobat Sober–Meter at the time of appellant's testing or trial. This issue has been waived by counsel's failure to object to the admission of this evidence at trial.

Appellant's argument reflects his belief that this issue is a ground for suppression of the evidence and should have been determined in his favor at the suppression hearing. Had this been so, appellant would have been precluded from raising this issue at trial since the suppression determination is conclusive and binding and evidence may not be opposed at trial on the basis of its suppressibility. Pa.R.Crim.P. 323(j). This issue, however, was not properly determinable at that stage because a suppression hearing is designed only to prevent the introduction of evidence that was *obtained* in violation of a defendant's rights and not to suppress evidence simply because its introduction at trial would be error. Pa.R.Crim.P. 323(a) and comment. As the test was properly administered to appellant his rights were not violated in obtaining the evidence.[4] So long as approval of the type of equipment by the Department of Health occurs before trial, although this may be after the time of testing, the evidence will be admissible under the implied consent law because the quality of the results is not vitiated by subsequent approval of the type of equipment.

In the instant case, however, the Department of Health regulations approving the use of the Mobat Sober–Meter were not issued until October 28, 1977, 28 Pa.Code § 5.102, 7 Pa.Bulletin 3197, which was subsequent to the admission of the test results at appellant's trial. This admis-

4. Even had this issue been one for determination at the suppression hearing, appellant waived it by failing to specifically raise it in his suppression motion which was directed solely to the proper administration of the test, a question separate from its admission into evidence under 75 Pa.C.S. § 1547(c). *See Commonwealth v. Baylis,* 477 Pa. 472, 384 A.2d 1185 (1978); *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975); Pa.R.Crim.P. 323(d).

sion, therefore, was subject to objection, but since appellant's counsel failed to do so at trial, we find the issue has been waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ Finally, we note that in the face of the other testimony concerning the odor of alcohol, appellant's bloodshot eyes, staggering walk, mumbled speech and performance on the physical coordination tests, the admission into evidence of the sober–meter results was harmless error. *Commonwealth v. Cook*, 277 Pa.Super. 152, 419 A.2d 707 (1980); *Commonwealth v. Boerner*, 268 Pa.Super. 168, 407 A.2d 883 (1979).

At trial, appellant did raise several objections on other grounds to testimony concerning the sober–meter results. He contends that the court erred in allowing the results to be introduced into evidence because the Commonwealth had failed to establish sufficiently a chain of custody. The Commonwealth's evidence showed that the testing device had been placed in a strong box used for storage purposes. The chemist who testified to his analysis of the sober–meter, stated that he had received the device from one Captain Stein on the same day it was administered. Although Captain Stein was not called to testify, other testimony revealed that one of his daily duties was to take used testing devices to the laboratory for analysis. Specifically, appellant charges that the lack of Captain Stein's testimony left a gap in the chain and that the Commonwealth must prove every link in the chain of custody before the evidence is admissible. We disagree and find that the evidence was properly admitted.

■ All that is required of the Commonwealth to demonstrate the admissibility of this evidence is that it establish a reasonable inference that the identity and condition of the testing device remained unimpaired. *Commonwealth v. Rick*, 244 Pa.Super. 33, 366 A.2d 302 (1976); *Commonwealth v. Miller*, 234 Pa.Super. 146, 339 A.2d 573 (1975), *aff'd*, 469 Pa. 24, 364 A.2d 886 (1976). There is no requirement that all who came in contact with the device be produced as witness-

es. *Commonwealth v. Snyder,* 254 Pa.Super. 186, 385 A.2d 588 (1978); *Commonwealth v. Jenkins,* 231 Pa.Super. 266, 332 A.2d 490 (1974). These gaps in the testimony go simply to the weight of the evidence of the results and not its admissibility. *Commonwealth v. Bolden,* 486 Pa. 383, 406 A.2d 333 (1979).

■ Appellant also alleges that the trial court improperly allowed testimony concerning the results of the sober–meter test to be presented to the jury as a fact rather than an expert opinion. Upon our examination of the transcript, we fail to see any error in the admission of the chemist's testimony as to his analysis. His testimony, as a whole, amply indicated that the test results were offered as his conclusions based on extensive analysis that was described to the jury in detail. He explained that the reading "indicates" the blood alcohol level and explained that the final result of .12 percent is subject to an error of plus or minus five percent. The testimony was not accorded any more weight than that to which it was entitled, and we fail to see how the jury could possibly have been misled as to the nature of this testimony.

Several other of appellant's assignments of trial error concern the prosecutor's closing argument. He contends that he was prejudiced by the prosecutor's references to the chemical test as establishing a "presumption" that he was under the influence and the remark that, taking into account the margin of error, the jury could find that the reading was as high as .126 percent alcohol. He also claims that the prosecutor improperly minimized crucial defense testimony by stating that Mr. Besecker, who testified that he had smelled no odor of alcohol on appellant's breath, had not been face to face with him. Our review, however, discloses no reversible error.

■ The necessity of reversal on the basis of a prosecutor's remarks during closing argument does not arise unless the comments unavoidably worked to prevent the jury from fairly weighing the evidence. *Commonwealth v.*

*Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Riley*, 459 Pa. 42, 326 A.2d 400 (1974). Although the general rule is that a prosecutor must limit his argument to the facts in evidence and the permissible inferences arising therefrom, *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Long*, 258 Pa.Super. 312, 392 A.2d 810 (1978), he need not discuss the facts in a vacuum, but may consider them in light of the applicable rules of law. *Commonwealth v. Gwaltney*, 479 Pa. 88, 387 A.2d 848 (1978); *see Commonwealth v. Graham*, 248 Pa.Super. 406, 375 A.2d 161 (1977). Of course, counsel must refrain from argument about which principles of law should apply, if there is any dispute, and may not state the law in a manner calculated to confuse the jury. *Commonwealth v. Gwaltney, supra*; ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function § 5.8a (Approved Draft 1970).

 The instant remarks regarding a "presumption" arising from the chemical test were fair restatements of 75 Pa.C.S. § 1547(d)(3), which directs that when the test reads .10 percent or more "it shall be presumed that the defendant was under the influence of alcohol." Although this presumption is a noncompulsory one and the test results are to be considered by the jury together with the other evidence introduced, *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974); *Commonwealth v. Gearhart*, 253 Pa.Super. 238, 384 A.2d 1321 (1978), the trial court had the duty to construe the statute and inform the jury of the particular nature of this presumption, as was done in the instant charge.[5] The jury was not misled by these statements concerning a presumption or the remarks concerning the margin of error of the test, the latter constituting merely a repetition of testimony given by the chemist. The prosecutor's statement about the proximity of the witness

5. Appellant claims that the judge's charge regarding the presumption also confused the jury by leading them to think that they were bound to accept the presumption. We see no merit in this argument since the judge clearly charged that the presumption was not conclusive but should be weighed with all the other testimony. (N.T. at 167).

testifying to the odor of alcohol was a fair comment upon the witness' ability to perceive such an odor, and while the testimony was clearly presented in the light least favorable to appellant, the bounds of propriety were not exceeded. Since we are not persuaded that the jury was prevented by any of these remarks from reaching a just verdict, we find no reversible error.

Appellant also argues that the court's charge to the jury was unsatisfactory in several respects. He claims the court erred by failing to instruct the jury under the new Vehicle Code provision which limits the offense to that of driving while intoxicated to a degree which renders a person incapable of safe driving. 75 Pa.C.S. § 3731(a)(1). The record indicates that the court gave instructions regarding the mental and physical conditions that would constitute being "under the influence" and specifically pointed out that these conditions must exist to a degree that renders the person incapable of safe driving. (N.T. 165–66). We find this charge correctly and adequately instructed the jury.

Similar to his objection to the prosecutor's summation of the evidence is appellant's claim that the trial judge also misstated Mr. Besecker's testimony during the charge. Specifically, during the summation of the evidence, the judge stated that the witness had testified that he was not close enough to appellant to observe his breath. (N.T. at 170). The actual testimony was not so conclusive since the witness stated only that appellant approached within a few feet of him several times for brief exchanges lasting a few moments each. (N.T. at 18–19). It appears that the judge drew a conclusion from the facts that the witness may not have been in a position to observe the odor of alcohol. A judge may properly refer to inferences to be drawn from the facts and express his opinion as to the effect of the evidence, provided that the statements have a reasonable basis and it is clearly left to the jury to decide the facts regardless of the judge's opinion. *Williams v. Philadelphia Transportation Co.*, 415 Pa. 370, 203 A.2d 665 (1964); *Commonwealth v. Vernille*, 275 Pa.Super. 263, 418 A.2d 713 (1980). In the

instant case the jury was properly instructed that their recollection must control, and hence, we find appellant was not prejudiced.

Appellant's final assignment of error regarding the charge alleges that following the court's instruction that appellant had a right to have the test administered by a physician of his own choice, the court properly instructed the jury that the police officer had no legal obligation to notify appellant of this right. We find this was a correct statement of the law. This court has previously determined that the implied consent statute does not require that a defendant be informed of this right or that failure to do so invalidates the results of the test. *Commonwealth v. Knaub*, 226 Pa.Super. 526, 323 A.2d 366 (1974); *see Commonwealth v. Sweet*, 232 Pa.Super. 372, 335 A.2d 420 (1975).

Finally, we must examine appellant's contention that he was denied a fair trial because the Commonwealth intentionally refused to reveal the names and addresses of eyewitnesses who were not called to testify and that he was thus entitled to a charge regarding the inference to be drawn from missing witnesses. Officer Webre testified that about eight or ten people were at the scene when he arrived but that they all appeared on the scene after the accident had occurred. The officer testified at the suppression hearing that he spoke to four or five persons and, after questioning, named appellant, the passenger in appellant's car, Mr. Roger Besecker, one Bonnie Harris and her companion whose name was unknown to the officer, as among those with whom he had spoken. Mr. Besecker testified that one Leona Walter and her son Richard followed him out of his house and were also on the scene. Mr. Besecker was the only bystander called to testify at trial.

The applicable law has been well delineated as follows: " '[I]n criminal trials the prosecution is not absolutely bound to call to the stand all available and material eyewitnesses. On the other hand, a number of decisions clearly indicate that when the Commonwealth does not

call to the stand such an eyewitness, it must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to procure the witness unaided.'" *Commonwealth v. Jones,* 452 Pa. 569, 580–81, 308 A.2d 598, 605 (1973), *quoting, Commonwealth v. Gray,* 441 Pa. 91, 99–100, 271 A.2d 486, 490 (1970).

Initially, the record indicates that the names of the bystanders with whom the investigating officer spoke were revealed to the defense. We also find it an important consideration that defense counsel made no request for pre–trial discovery in an attempt to ascertain these names. *Commonwealth v. Paull,* 250 Pa.Super. 416, 378 A.2d 1006 (1977); *see* Pa.R.Crim.P. 305 B(2)(a). Instead, appellant's counsel unsuccessfully attempted to make improper use of the suppression hearing as a discovery device.

 Additionally, before the Commonwealth's failure to produce an eyewitness entitles a defendant to a charge permitting the inference that the witness' testimony would have been unfavorable to the Commonwealth, the trial judge must examine the Commonwealth's power to produce the witness. *Commonwealth v. Trignani,* 185 Pa.Super. 332, 138 A.2d 215, *aff'd.* 393 Pa. 140, 142 A.2d 160 (1958). On general grounds of expense and inconvenience, the Commonwealth may be regarded as lacking the power to produce a witness whose testimony would be comparatively unimportant, cumulative or inferior. *Commonwealth v. Paull, supra; see* II Wigmore on Evidence § 287 (Chadbourn rev. 1979). Since these other bystanders would not have had even the limited opportunity that Mr. Besecker, who was called as a witness, had to speak to appellant and closely view his physical state, their testimony would clearly have been inferior to his. The Commonwealth may well have dispensed with their testimony on this ground rather than because of apprehension as to the tenor of their testimony. The court, therefore, properly denied the request for an instruction to the jury on their power to draw an unfavorable inference from the Commonwealth's failure to call these witnesses.

Finding no error in the denial of suppression or in the proceedings at trial, we affirm the judgment of sentence.