482 A.2d 567

**COMMONWEALTH of Pennsylvania**

v.

**Efrain FERNANDEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1984.

Filed Sept. 21, 1984.

282

Nino V. Tinari, Philadelphia, for appellant.

Stephen G. Heckman, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

OLSZEWSKI, Judge:

Appellant was convicted by jury of two counts of second-degree murder, burglary, and criminal attempt-robbery on December 29, 1981. Following oral argument, post-verdict motions were denied. Appellant was sentenced to two concurrent terms of life imprisonment on the second-degree murder charges, ten to twenty years' imprisonment on the burglary charge and five to ten years' imprisonment on the criminal attempt-robbery charge. The burglary and criminal-attempt sentences were to run concurrently with each other but consecutively to the two life sentences.

On September 28, 1974, appellant, Robert Tome, Sigisfredo Ortiz, and a man named Santiago entered the residence and place of business of Doris and Jean Maiale, planning to steal a large amount of cash which they believed to be on the premises. While subduing the Maiale sisters, Tome shot them each in the head. Panicked and before even taking the money they came to steal, the would-be robbers fled to Philadelphia. Roberto Tome was tried and convicted of the murders and related crimes in 1975.[1] Sigisfredo Ortiz entered a plea of guilty to attempted robbery and testified for the Commonwealth at both the Tome and Fernandez trials. Santiago died before being brought to trial. Appellant, Fernandez, was apprehended by the police in Puerto Rico in 1981.

Five issues are raised in this appeal. First, appellant argues that his constitutional right to protection against self-incrimination and his presumption of innocence were abridged by the lower court's grant of a pretrial motion to have appellant shave his beard. The purpose of the order was to facilitate identification of appellant by a Common-

1. *Commonwealth v. Tome,* 484 Pa. 261, 398 A.2d 1369 (1979).

wealth witness. We hold that the order did not violate appellant's constitutional rights.

Although this is an issue of first-impression for us,[2] there is a plethora of case law available from other jurisdictions.[3] At the outset, we recognize that Article I, Section 9 of the Pennsylvania Constitution, providing that an accused "cannot be compelled to give evidence against himself," does not expand the protection against self-incrimination afforded by the Fifth Amendment to the United States Constitution and made applicable to the states by virtue of the Fourteenth Amendment. *Commonwealth v. Moss*, 233 Pa.Super. 541, 334 A.2d 777 (1975). The Fifth Amendment has consistently been held to exclude only evidence which is testimonial in nature. *United States v. Lamb*, 575 F.2d 1310 (10th Cir.), *cert. denied sub nom. Clary v. United States*, 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978). Testimonial evidence is communicative evidence as distinguished from demonstrative or physical evidence. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (*held*, extraction of blood is demonstrative physical evidence). Justice Holmes recognized this distinction many years ago when he wrote that "the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *Holt v. United States*, 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910).[4]

---

**2.** The issue was raised in one prior case, but was resolved by the Pennsylvania Supreme Court before reaching the merits. *Commonwealth v. Bassi*, 284 Pa. 81, 130 A. 311 (1925).

**3.** *See generally* 24 A.L.R. 4th 592. We also note the excellent and informative opinion by Judge Yohn, below. *Commonwealth v. Fernandez*, No. 1879–81, slip op. (Montgomery County 1982).

**4.** *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966):

" ... (B)oth federal and state courts have usually held that it offends no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to

We recognize that compelling appellant to shave his beard represents an extra-ordinary intrusion of the Commonwealth's police power into the respect which it must accord to the dignity and integrity of its citizens.[5] Nevertheless, we are persuaded that the order served the interests of justice in obtaining demonstrative evidence of appellant's appearance, at the time of the murders, for the jury as finder of fact.[6] Appellant was not compelled to communicate protected knowledge by the order, nor does a careful barbering shock the conscience as a method of discovery "too close to the rack and screw."[7] We reject appellant's argument that the order reflected a predetermination of appellant's guilt.[8] Appellant contends that the order to shave implied the court's acceptance of the Commonwealth's identification of the perpetrator. We disagree. The order served the Commonwealth's interest in pursuing the effective enforcement of criminal law through the discouragement of dissemblance or disguise.

> appear in court, to stand, to assume a stance, to walk, or to make a particular gesture."
> *Id.* at 764, 86 S.Ct. at 1832 (citation omitted).

**5.** *Compare Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):
> "To maintain a 'fair state-individual balance' ... to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors ... "
> *Id.* at 460, 86 S.Ct. at 1620.

**6.** *Compare United States v. Satterfield,* 572 F.2d 687 (9th Cir.), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978) (*held,* requiring defendant to wear disguise for identification not improper).

**7.** *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (*held,* coercing defendant to undergo "stomach pumping" to obtain narcotics violated Due Process Clause under the Fourteenth Amendment).

**8.** Appellant draws his argument from the dissent in *Andrews v. State,* 291 Md. 622, 436 A.2d 1315 (1981); *but see Commonwealth v. Richbourg,* 260 Pa.Super. 438, 394 A.2d 1007 (1978) (*held,* ordering defendant to stand during trial, thereby placing him in "spotlight," works no prejudice).

Appellant next alleges error in the lower court's refusal to declare a mistrial after the Commonwealth's chief witness, Ortiz, alluded to appellant's subsequent illicit drug activities. We hold that the lower court properly refused to declare a mistrial.

At trial, the following exchange occurred during the Commonwealth's direct examination of Ortiz:

"Q. Anyway, after you last saw Fernandez that day, that's September 28, did you ever see him again after then?

"A. Fernandez, I seen him on the street before Seventh, on Cambria (the remainder of the witness' answer was unintelligible.)

"MR. TINARI: I object and move for a mistrial."

N.T., Volume I, December 18, 1981, p. 367.

At sidebar, defense counsel contended that Ortiz had said that he had met Fernandez at Cambria and he was "copping dope." The trial judge denied the motion for a mistrial, but issued a cautionary instruction and proceeded to voir dire the jury to ascertain what they had heard. Two jurors among the fourteen empaneled had heard Ortiz testify that he saw Fernandez engaged in drug dealing activity. Both jurors indicated that their verdict would not be influenced by Ortiz' comment.[9]

The decision to grant a mistrial lies within the sound discretion of the trial court and will be reversed only where there is a manifest abuse of that discretion. *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 385 A.2d 405 (1978). It is settled that evidence of a distinct crime, not charged in the information, cannot be introduced against a defendant due to its prejudicial impact. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). Nevertheless, the extreme remedy of a mistrial is not automatically required if it is determined that the inference of prior criminality was innocuous and that effective curative instructions were im-

9. N.T., Volume I, December 18, 1981, pp. 394–408.

mediately given. *Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249 (1977).

■ We accept the conclusion of the court below that the statement, under the circumstances, was innocuous, and agree that it was unintentionally elicited by the prosecutor and not responsive to the question. Further, the Commonwealth did not exploit the reference to drugs. Finally, the lower court's prompt and thorough response purged the comment of any prejudice to appellant.

Appellant next alleges error in the lower court's refusal to grant a mistrial following Ortiz' testimony concerning identification of appellant from photographs supplied by the police. During appellant's cross-examination of Ortiz, the following exchange occurred:

"Q. You do recall telling police authorities here in Montgomery County about a description of the person whom you say was Chiggie (appellant's nickname), is that correct?

"A. Actually I was shown some pictures and I picked it out of the pictures."

N.T., Volume II, December 21, 1981, p. 182.

■ Appellant argues that this testimony permitted a reasonable inference by the jury of appellant's prior criminal activity, thereby constituting reversible error. We disagree and hold that the reference did not reasonably allow such an inference. Absent prejudice resulting from the reference, appellant's motion for mistrial was properly denied. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972); *compare Commonwealth v. Krasner,* 285 Pa.Super. 389, 427 A.2d 1169 (1981) (no error where witness testified she was shown a few pictures by police officer); *Commonwealth v. Craft,* 455 Pa. 616, 317 A.2d 213 (1974) (passing references not prejudicial).[10]

10. Despite warnings of the lower court of possible prejudice, appellant's counsel made frequent reference to the pictures. N.T. Volume II, December 21, 1981, pp. 210–239. *Cf. Commonwealth v. Oglesby,* 274 Pa.Super. 586, 418 A.2d 561 (1980) (no error where possible

Appellant next argues that the court below erred in refusing to allow the introduction of alibi testimony from one Carlos Santiago who would have testified that appellant was with him on the day of the murders.[11] The lower court ruled that the testimony was precluded due to appellant's failure to give notice of intent to present an alibi defense under Pa.R.Crim.P., Rule 305 C, 42 Pa.C.S.[12] Rule 305 C requires that notice must be given at the time of filing of the omnibus pretrial motion, within thirty days after arraignment. Pa.R.Crim.P., Rules 305–307, 42 Pa.C.S.

In this issue of first impression, appellant argues that Rule 305 violated his right to present a defense under the Sixth Amendment to the United States Constitution and under Article I, Section 9 of the Pennsylvania Constitution. We disagree and hold that the court below properly refused to allow the introduction of alibi testimony.

Rule 305 addresses the delicate balance between the interest of the accused in presenting a full and complete defense and the interest of the Commonwealth in avoiding fabricated alibis, unfair surprise, and the inevitable delay of justice wrought by an "eleventh-hour defense." *See Williams v. Florida*, 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1895–1896, 26 L.Ed.2d 446 (1983). Appellant's argument is all the

inference of prior criminal conduct resulted from appellant's cross-examination of witness).

**11.** The witness was permitted to testify as to other matters. Lower court opinion at 15.

**12.** Rule 305 states in pertinent part:
C. Disclosure by the Defendant
(1) Mandatory:
(a) Notice of Alibi Defense: A defendant who intends to offer the defense of alibi at trial shall, at the time required for filing the omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses whom the defendant intends to call in support of such claim.
Pa.R.Crim.P., Rule 305, 42 Pa.C.S.

more poignant where he faces life sentences for his murder convictions.

The Supreme Court of the United States has expressly reserved the question of the constitutionality of the preclusion of witness alibi testimony for noncompliance with notice provisions. *Wardius v. Oregon,* 412 U.S. 470, at 472 n. 4, 93 S.Ct. 2208, at 2211 n. 4, 37 L.Ed.2d 82 (1973); *Williams v. Florida,* 399 U.S. at 83 n. 14, 90 S.Ct. at 1897 n. 14, 26 L.Ed.2d 446 (1970). *Williams* is of particular interest to us. There, the Court held that a Florida statute requiring advance notice of an alibi defense was valid on its face. The Court reasoned that there is ample room in the adversary system for a rule "designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." 399 U.S. at 82, 90 S.Ct. at 1896. Rule 305 C serves this same pursuit of justice and is constitutional on its face.[13]

Appellant also argues that Rule 305 C is unconstitutional as applied to the facts of this case. This argument lacks merit. Rule 305 C(1)(d) gives a trial court three options when a defendant fails to file and serve notice of an alibi defense: (1) the court may exclude entirely any evidence offered by the defendant in the form of alibi witnesses other than defendant himself; (2) the court may grant a

---

**13.** Appellant refers this Court's attention to *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), which struck down a Texas procedural statute providing that persons charged as principals, accomplices, or accessories in the same crime could not be witnesses for each other. *Washington* is distinguished from the instant case in that Rule 305 C does not absolutely bar an accused from calling alibi witnesses. The case of *Alicea v. Gagnon,* 675 F.2d 913 (7th Cir.1982), is also inapposite, addressing only the constitutionality of excluding the alibi testimony of the defendant himself. *See* Pa.R.Crim.P., Rule 305 C(1)(d), 42 Pa.C.S. providing that a defendant's own alibi testimony cannot be excluded. In the instant case, appellant did give alibi testimony in his own behalf. N.T., Volume III, December 24, 1981, pp. 251–278.

*See also Commonwealth v. Vecchiolli,* 208 Pa.Super. 483, 224 A.2d 96 (1966) (former preclusion of alibi rule, Pa.R.Crim.P., Rule 312, 42 Pa.C.S., held facially constitutional).

continuance for the purpose of further investigation by the Commonwealth; or (3) the court may make such other order as the interests of justice require.

As the lower court points out, appellant had ample time to serve notice of his alibi defense from his arraignment on September 2, 1981, through several continuances and up to the beginning of trial on December 17, 1981. It was not until the middle of the sixth day of trial, after the Commonwealth had presented its case-in-chief and after the defense had presented the testimony of two witnesses, that counsel for appellant proffered the alibi testimony.

Under these circumstances, the interests of justice demand that the alibi testimony be excluded. The Commonwealth had no prior notice of the existence of an alibi witness. *Compare Commonwealth v. Vecchiolli, supra.* Appellant delayed giving notice. Further, he failed to justify that delay. Introduction of the testimony at that stage of the proceedings would clearly have prejudiced the Commonwealth's ability to prove its case. *See United States ex rel. Snyder v. Mack*, 372 F.Supp. 1077 (E.D.Pa. 1974). These same factors persuade us that a continuance would have been inappropriate. The incident was seven years old. Appellant had ample opportunity to prepare an alibi defense. To have stayed proceedings after six days of testimony, long enough for the Commonwealth to prepare a rebuttal to the proposed alibi, would have diminished the jurors' recollection of the prior testimony. Rule 305 C(1)(d) is designed to avoid this potential chaos.[14]

Finally, appellant argues that his trial before a death-qualified jury violated his right to equal protection of the law and of due process. Although appellant raised this issue in his post-verdict brief, we agree with the court below that this issue was abandoned at the time of post-trial

14. *See* Epstein, *Advance Notice of Alibi,* 55 J.Crim.L., Criminology & Police Science 29: "If all the defendant risks is a continuance, he will purposely not give notice because the continuance is valuable to him. When it is granted, it comes after the prosecution has presented its evidence and allows it to get cold." *Id.* at 35–36.

argument and therefore waived for purposes of our review. Lower court opinion at 29; *see Commonwealth v. Urbina*, 290 Pa.Super. 117, 434 A.2d 157 (1981).

The judgment of sentence is affirmed.