## Commonwealth v. Mattes

216

*Brendan J. Vanston*, district attorney, for the Commonwealth.

*Raymond W. Ferrario*, for defendant.

GARDNER, *P.J.*, May 3, 1985—This matter arises on defendant's omnibus pre-trial motion for relief, primarily motions to suppress evidence of (1) a breathalyzer test and (2) "field sobriety" tests administered defendant subsequently charged with the crime of driving under the influence of alcohol. Vehicle Code, as amended, Act of 1982, December 15, P.L. 1268, section 9, 75 Pa.C.S. §3731.

On the evidence received at the hearing held February 19 and March 18, 1985, we find the following facts:

1. On July 8, 1984, Falls Township, Wyoming County, police officers apprehended defendant in the operation of a motor vehicle and, without prior warnings under the Miranda decision, administered certain "field sobriety" physical tests to defendant.

2. A breathalyzer examination utilizing Smith and Wesson Model 1000 Breathalyzer was administered to defendant on the same day.

3. The breathalyzer equipment had been tested for accuracy (a certificate dated July 2, 1984 was received in evidence) but never calibrated.

4. The breathalyzer device had been "modified" to protect against radio frequency interference on May 26, 1982.

5. The breathalyzer machine was located in the Falls Township, Wyoming County, Pa. municipal building on a metal cabinet which was later found to be magnetized. Fluorescent lighting with which the building was equipped was illuminated when the breathalyzer test was administered defendant.

6. Radio station WARM transmitting towers are situated one and a half miles linear distance from the municipal building.

## I.

Defendant first argues that the breathalyzer test results of the examination of defendant conducted on July 8, 1984 are inadmissible because the Commonwealth did not establish that the device utilized, Smith and Wesson Model 1000, was "calibrated" in accordance with standards and procedures promulgated by the Pennsylvania Departments of Health and Transportation as set forth in the Vehicle Code, as amended, Act of 1982, 75 Pa.C.S. §1547(c)(1), supra:

". . . Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation."

It is clear and undisputed that accuracy testing is and has been the subject of appropriate regulations, and that the procedure was followed instantly. However, defendant takes the position that calibration,

as referred to in the Vehicle Code, contemplates a procedure distinct from accuracy testing. This stance is supported by several decisions of the Court of Common Pleas of Allegheny County, including a persuasive opinion of the Honorable Ralph J. Cappy in Commonwealth of Pennsylvania v. Simmeth, Allegheny County Court of Common Pleas no. CC8405850. Inter alia, Judge Cappy writes:

"This Court has concluded pursuant to the Rules of Statutory Construction, that the legislature's use of the word 'shall' with regard to the responsibility of the Departments of Health and Transportation herein must be construed as a *mandate* to said Departments to promulgate regulations establishing both *accuracy* and *calibration* tests for breathalyzer units in Pennsylvania. Furthermore, the Statute has been drafted to require the creation of, and compliance with, said regulations as a *condition precedent* to the admissibility of breathalyzer results in proceedings under Title 75." (Emphasis supplied.)

On the other hand, the district attorney urges us to find that calibration and accuracy testing are synonymous. This appears to have been the position once taken by the Departments of Health and Transportation, but, in the face of contrary Allegheny County decisions and the opinions of a portion of the defense bar, a procedure for calibration separate from accuracy testing was the subject of regulations made effective on January 7, 1985. See Pennsylvania Bulletin, Volume 14, no. 51, dated Saturday, December 22, 1984, page 4600, subparagraph 6.

Also, we are not unmindful of the advice of the Attorney General of Pennsylvania who, under date of March 6, 1985, advised that the Smith and Wesson Model 1000 Breathalyzer "no longer be used for breath-testing in the Commonwealth of Pennsylvania" in order to "ensure the integrity of future prosecutions".

nia" in order to "ensure the integrity of future prosecutions".

To say that confusion reigns is to understate the equivocation that characterizes the instant matter. In such a posture, there is a strong probability that defendant's due process rights under the United States and Pennsylvania Constitutions would be denied by admission of the breathalyzer test results into evidence at trial.

It is not necessary to discuss the extensive effort that defendant has made to support the proposition that the breathalyzer used by the Falls Township police on July 8, 1984 was the subject of electromagnetic interference as a result of fluorescent lighting and a metal cabinet. Although the expert testimony produced by defendant was articulate, we feel that it was more appropriately an attack on the weight of the breathalyzer test results rather than on some asserted Constitutional deprivation.

## II.

Defendant next contends that the results of the so-called "field sobriety" tests administered to him without prior Miranda warnings violated his Fifth Amendment rights under the United States Constitution.

We disagree.

Such tests are of a physical nature, rather than testimonial, and, therefore, no violation of the privilege against self-incrimination occurs, nor are Miranda warnings required. Commonwealth v. Benson, 280 Pa. Super. 20, 421 A.2d 383 (1980).

## CONCLUSIONS OF LAW

1. Admission into evidence of the results of a test conducted upon defendant on July 8, 1984 by the

use of a Smith and Wesson Model 1000 Breathalyzer would result in a denial of defendant's rights under Article 1, section 9, of the Pennsylvania Constitution and the Fourteenth Amendment to the Constitution of the United States of America.

2. No violation of law or deprivation of Constitutional rights resulted from the administration of "field sobriety" tests conducted upon defendant on July 8, 1984 by Falls Township police officers.

## ORDER

And now, May 3, 1985, based upon the findings of fact and conclusions of law, together with the opinion of this court attached hereto and of even date.

It is ordered that the motion to suppress the results of the breathalyzer test conducted on July 8, 1984 upon defendant, Roger Mattes, Jr., be and is hereby granted, and the said test results shall not be admitted into evidence at any trial of the above-captioned matter.

It is further ordered that all other motions for pretrial relief be and the same are hereby denied.