528 A.2d 1385

**COMMONWEALTH of Pennsylvania**

v.

**Thomas A. BRUDER, Jr., Appellant.**

Superior Court of Pennsylvania.

Filed July 21, 1987.

Carmen P. Belefonte, Media, for appellant.

Joseph J. Mittleman, Assistant District Attorney, Media, for Com.

Before CIRILLO, President Judge, and ROWLEY and HOFFMAN, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence, following a non-jury trial, for driving under the influence of alcohol and related offenses. We reverse and remand.

The issues presented for our review are: (1) whether the criminal complaint should have been dismissed due to its defects; (2) whether certain evidence was properly admitted at trial; and (3) whether the verdict was supported by sufficient evidence.

A patrolman stopped appellant Bruder's car after the officer saw him pass a red light. The patrolman also witnessed what he described as Bruder's erratic driving behavior. When the policeman approached Bruder, he noticed indicia of intoxication. The patrolman testified that Bruder was unable to walk in a straight line, heel to toe, or recite the complete alphabet. Appellant was then arrested for driving under the influence of alcohol, and informed of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 1624–27, 16 L.Ed.2d 694 (1966).

## I

Appellant argues that the complaint filed against him was defective and, therefore, should have been dismissed. More specifically, appellant asserts that the complaint violated Pennsylvania Rules of Criminal Procedure 132 and 134.

█ The alleged violation by the Commonwealth of Rule 132 was its failure to include a verification with the complaint. Rule 132(9) requires that every complaint include a "verification by the affiant that the facts set forth in the complaint are true and correct to the affiant's personal knowledge or information and belief, and that any false statements therein are made subject to the penalties ... relating to unsworn falsification to authorities...."

In the case at bar, the arresting officer, in filing the complaint, used an old form which was designed to conform to an older version of Rule 132. The complaint did not conform to the current version of Rule 132 because it did not contain the required clause that false statements were subject to the penalties of unsworn falsification.

The trial court found that based on Pa.R.Crim.P. 150, the defect in the complaint did not warrant dismissal of the charges. Pa.R.Crim.P. 150 provides that a "defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons or warrant, or a defect in the procedures of this chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant."

The trial court noted that the defect concerning the absence of a verification was not raised in this case until after the preliminary hearing and suppression hearing. The trial court also observed, and we agree, that the appellant was aware of the charges against him and was not prejudiced by the defect in the complaint.

We express displeasure with the failure of the police to fully comply with the requisite form of a complaint. The plain language of Rule 150, however, does not permit us to

discharge the complaint in this particular case because the defect was neither timely raised nor was it prejudicial to the appellant.

■ Appellant also contends that Pa.R.Crim.P. 134 was violated. Rule 134 provides that in any proceeding initiated by a complaint, the issuing authority shall ascertain and certify on the complaint that there is probable cause, in the form of an affidavit, for the issuance of process.

Notwithstanding appellant's assertion to the contrary, we discern no language in the rule, or in the comments to the rule, which require the police to personally appear and verify the complaint before the district justice involved in the case. Because we find no violation of Rule 134, we cannot dismiss the complaint on this basis.

Appellant also argues that the defective complaint was a violation of Pa.R.Crim.P. 130(d). We need not address this argument due to our holding that there were no fatal defects in the instant complaint.

## II

Bruder argues that certain statements that he made after he was stopped, as well as the results of the field sobriety test, should have been suppressed.

■ When appellant's car was stopped, appellant stepped out and approached the police vehicle. The police officer asked appellant for his driver's license, registration and insurance card. Appellant returned to his car to obtain the requested information. After appellant had provided this information, the police officer asked appellant whether he had been drinking and appellant responded that he had. The police officer also asked appellant where he was going. Appellant responded that he was going home. Bruder argues that these responses should be suppressed because they were made before he was advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

*Miranda* warnings need be given only when one is subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Berkemer v. McCarty*, 468 U.S. 420, 428–29, 104 S.Ct. 3138, 3144, 82 L.Ed.2d 317 (1984). In order to determine whether the responses made by appellant before he received his *Miranda* warnings should have been suppressed, we must decide whether they were elicited during custodial interrogation.

In *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the United States Supreme Court ruled that a motorist was not in custody when he was stopped by a police officer who asked "a modest number of questions and requested him to perform a simple balancing test visible to passing motorists." 468 U.S. at 442, 104 S.Ct. at 3151. As in the case at bar, the driver in *McCarty* was stopped after being suspected of driving under the influence of alcohol, admitted that he had had a few drinks, and failed a balancing test before being advised of his *Miranda* rights. The Court in *McCarty*, however, refused to adopt a bright line test which would have definitively answered the question of whether *Miranda* applies to all traffic stops or whether a suspect need be advised of his rights only when he is formally placed under arrest. 468 U.S. at 441, 104 S.Ct. at 3151. Thus, we are afforded a measure of flexibility in deciding exactly when a suspect has been taken into custody.

In Pennsylvania, "custodial interrogation does not require that police make a formal arrest, nor that the police intend to make an arrest.... Rather, the test of custodial interrogation is whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Commonwealth v. Meyer*, 488 Pa. 297, 307, 412 A.2d 517, 521 (1980) (quoting *Commonwealth v. Brown*, 473 Pa. 562, 570, 375 A.2d 1260, 1264 (1977)). Interrogation in this context is defined as questioning " 'expected to elicit a confession or other incriminating statements.' " *Commonwealth v. Bracey*, 501 Pa. 356, 367, 461 A.2d 775, 780 (1983)

(quoting *Commonwealth v. Sero,* 478 Pa. 440, 453, 387 A.2d 63, 70 (1978)).

In *Commonwealth v. Meyer,* the Pennsylvania Supreme Court ruled that the driver of a car involved in an accident who was suspected of driving under the influence of alcohol and who was told by police to wait at the scene until additional police arrived was in custody for purposes of *Miranda.* The *Meyer* court reasoned that because the defendant had a reasonable belief that his freedom of action had been restricted, statements elicited before he received his *Miranda* warnings should have been suppressed. 488 Pa. at 307, 412 A.2d at 522. *See generally* Annotation, *Right of Motorist Stopped by Police Officers To Be Informed at That Time of His Federal Constitutional Rights Under Miranda v. Arizona,* 25 A.L.R.3d 1076 (1969) (cases collected).

We rely on *Meyer* in finding that Bruder reasonably believed that his freedom of action had been restricted. Undoubtedly, he was not free to leave when he made the statements elicited. That the policeman's questions were intended to elicit incriminating statements remains obvious. We cannot readily accept an alternative reason why Bruder was asked if he had been drinking. Thus, based on the reasoning in the *Meyer* case, we conclude that Bruder's response that he had been drinking should have been excluded as a statement made during custodial interrogation without the benefit of *Miranda* warnings. *Meyer,* 488 Pa. at 307, 412 A.2d at 522. *See generally McCarty,* 468 U.S. at 441 n. 34, 104 S.Ct. at 3151 n. 34 (United States Supreme Court cites *Meyer* in connection with discussion which intimates that duration of and circumstances surrounding traffic stop impact on the determination of whether there was a custodial interrogation for purposes of providing *Miranda* warnings). As we have established that custodial interrogation existed at the point that Bruder was asked whether he had been drinking, the subsequent response concerning his destination should also have been excluded.

■ Bruder's statement, "You don't know who I am," was admitted into evidence over the objection of counsel. Although this statement was made before Bruder received his *Miranda* warnings, it was a spontaneous utterance not made in response to a question by the police officer. In *Commonwealth v. Bracey*, 501 Pa. 356, 461 A.2d 775 (1983), the Pennsylvania Supreme Court ruled that a statement is admissible notwithstanding the lack of *Miranda* warnings if it was not given in response to police conduct which evoked an admission, or if it was freely given without compelling influences. *Id.*, 501 Pa. at 367, 461 A.2d at 780 (quoting *Commonwealth v. Sero*, 478 Pa. 440, 453, 387 A.2d 63, 70 (1978)). It is clear from the record that this particular statement by Bruder was freely made in the absence of evocative police conduct. Therefore, it was properly admitted.

■ After appellant informed the police officer that he had had a few drinks, the police officer asked the appellant to recite the alphabet and to walk in a straight line, heel to toe. Appellant argues that these field sobriety tests should be suppressed. It is settled in Pennsylvania that "[r]equiring a driver to perform physical tests ... does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial, and therefore, no *Miranda* warnings are required." *Commonwealth v. Benson*, 280 Pa.Super. 20, 29, 421 A.2d 383, 387 (1980).

■ Although requiring Bruder to walk in a straight line was a physical test which need not have been preceded by *Miranda* warnings, we cannot readily reach the same conclusion regarding Bruder's recitation of the alphabet. Whereas the constitutional protection against self-incrimination which *Miranda* was designed to protect does not encompass physical evidence, it does refer to testimonial evidence. *Benson*, 280 Pa.Super. at 29, 421 A.2d at 387. "Testimonial evidence is communicative evidence as distinguished from demonstrative or physical evidence." *Com-*

*monwealth v. Fernandez,* 333 Pa.Super. 279, 284, 482 A.2d 567, 569 (1984).

We view the recitation of the alphabet as essentially communicative in nature. Therefore, because the recitation was elicited before Bruder received his *Miranda* warnings, it should have been excluded as evidence. *Benson,* 280 Pa.Super. at 29, 421 A.2d at 387 (citing *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). *See Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630.

■ In order to reverse on the basis of the introduction of inadmissible evidence, we must find an abuse of discretion as well as a showing of actual prejudice resulting from the tainted evidence. *Commonwealth v. Sweger,* 351 Pa.Super. 188, 195, 505 A.2d 331, 334 (1986) (citing *Lewis v. Pruitt,* 337 Pa.Super. 419, 487 A.2d 16 (1985)); *see also Commonwealth v. Smoyer,* 505 Pa. 83, 88, 476 A.2d 1304, 1307 (1984) (effect of tainted evidence); *Commonwealth v. Johnson,* 227 Pa.Super. 96, 102–03, 323 A.2d 813, 816 (1974) (same).

Based on our analysis which determined that evidence obtained during Bruder's custodial interrogation was inadmissible, we hold that it was an abuse of discretion to admit such evidence. Introduction of the tainted evidence was clearly prejudicial to Bruder because the absence of such evidence might very well have led to a different verdict. Thus, we must reverse and remand for proceedings consistent with this opinion.

### III

■ The last issue presented is whether there was sufficient evidence to find appellant guilty of driving under the influence of alcohol, 75 Pa.C.S. § 3731.

Our standard of review for this issue is limited. We must "view the evidence in the light most favorable to the Commonwealth [as verdict winner] and, drawing all reasonable inferences therefrom favorable to the Commonwealth, de-

termine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Stoyko*, 504 Pa. 455, 462, 475 A.2d 714, 718 (1984) (citing *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980)).

Even though we have determined in part II of this opinion that certain evidence should not have been admitted, we also recognize that when reviewing the sufficiency of the evidence, the "entire record with all evidence actually received must be considered, whether or not the lower court's rulings thereon were correct." *Commonwealth v. Minnis*, 312 Pa.Super. 53, 55, 458 A.2d 231, 232 (1983). *See Commonwealth v. Manhart*, 349 Pa.Super. 552, 556, 503 A.2d 986, 988 (1986); *see also Commonwealth v. Nelson*, 320 Pa.Super. 488, 494, 467 A.2d 638, 641 (1983) (In passing upon the sufficiency of the evidence, we evaluate all of the evidence, whether erroneously received or not. The proper remedy for prejudicial error due to inadmissible evidence is grant of a new trial with such evidence excluded). In *Minnis*, we found that the record as a whole indicated that the evidence was sufficient, but we reversed and remanded because we ruled that certain out-of-court identifications should have been suppressed.

We have the benefit of a recent consideration of the sufficiency of evidence in connection with 75 Pa.C.S. § 3731, by the Pennsylvania Supreme Court in *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986). The sole issue in *Griscavage* was whether there was sufficient evidence to establish guilt beyond a reasonable doubt on the charge of driving while under the infuence of alcohol.

The Court stated that in order to establish the defendant's guilt, "the Commonwealth had to prove: (1) that he was operating a motor vehicle, (2) while under the influence of alcohol to a degree which rendered him incapable of safe driving." *Griscavage*, 512 Pa. at 544, 517 A.2d at 1258; 75 Pa.C.S. § 3731(a)(1) (citations omitted). As in the case before us, there was no dispute in *Griscavage* regarding the first element. With respect to the second element, the

Court quoted an interpretation of the phrase "under the influence of alcohol," which, though based on a prior statute, is applicable to the current version of § 3731(a)(1).

The statute does not require that a person be drunk, or intoxicated, or unable to drive his automobile safely in traffic,.but merely that the Commonwealth prove beyond a reasonable doubt that the defendant was operating his automobile under the influence of intoxicating liquor ...

The statutory expression "under the influence of intoxicating liquor" includes not only all the well known and easily recognized conditions and degrees of intoxication, but also any mental or physical condition which is the result of drinking alcoholic beverages and (a) which makes one unfit to drive an automobile, or (b) *which substantially impairs his judgment, or clearness of intellect, or any of the normal faculties essential to the safe operation of an automobile.*

*Griscavage,* 512 Pa. at 544–45, 517 A.2d at 1258 (emphasis in original) (quoting *Commonwealth v. Horn,* 395 Pa. 585, 590–91, 150 A.2d 872, 875 (1959)).

In the instant case, the record indicates that appellant had been drinking, had been driving erratically, and had performed poorly in field sobriety tests. The trier of fact concluded that those faculties essential to the safe operation of an automobile were substantially impaired by appellant's drinking.

The *Griscavage* case instructs us to consider indicia of intoxication together with the other circumstances surrounding the traffic stop. Based on all the evidence presented in the trial court, these indicia and circumstances support an inference of substantial impairment of faculties sufficient to satisfy the test in *Horn.*

We recently upheld a conviction for driving under the influence in a case that was factually similar to the instant case. In *Commonwealth v. Dougherty,* 351 Pa.Super. 603, 609, 506 A.2d 936, 939 (1986) (Cirillo, J., now P.J.), we held that the evidence was sufficient to support a conviction under 75 Pa.C.S. § 3731 where the defendant was observed

operating a motor vehicle that was swerving from side to side. Upon stopping the vehicle in *Dougherty,* the police noticed the odor of alcohol and an accumulation of alcoholic beverages inside the vehicle. The driver in *Dougherty* did not perform well in field sobriety tests and had difficulty walking and standing upright without placing his hands on his vehicle. Although in the case before us there was no evidence of an accumulation of alcoholic beverages inside the vehicle, we find that the *Dougherty* case is substantially similar to the case at bar and we rely on it as a basis for our decision.

Based on our application of *Griscavage* and *Dougherty,* and viewing the evidence as a whole in the light most favorable to the Commonwealth, we conclude that there was adequate support for finding the appellant guilty of driving under the influence of alcohol. As we discussed earlier, however, and as we did in *Minnis,* we must still reverse and remand. *See Nelson.*

Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

ROWLEY, J., files a concurring and dissenting statement.

ROWLEY, Judge, concurring and dissenting:

While I agree with the majority's disposition of the first and third issues concerning dismissal of the criminal complaint and sufficiency of the evidence, I respectfully disagree with the conclusion that appellant's statements should have been suppressed under *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980). I think that *Meyer* is distinguishable on its facts and that the facts in this case closely parallel those in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Considering also that the U.S. Supreme Court cited *Meyer* as an example of the confusion among various jurisdictions in applying *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) to situations involving motorists stopped for

traffic violations, I think that *Berkemer* is controlling in this case. I would affirm the judgment of sentence.