542 A.2d 1015

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William C. PETH.**

Superior Court of Pennsylvania.

Submitted March 17, 1988.

Filed May 18, 1988.

266

Lorinda L. Hinch, Assistant District Attorney, Mercer, for Com., appellant.

Christopher J. St. John, Assistant Public Defender, Greenville, for appellee.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the order below granting appellee's motion to suppress statements he made to the police. In granting appellee's motion, the suppression court expressly relied upon our recent decision in *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987). Appellant, the Commonwealth, contends that the suppression court erred in granting appellee's motion, and urges us not to follow *Bruder*. For the reasons that follow, we affirm the order of the suppression court.

On April 22, 1987, appellee was arrested for driving under the influence of alcohol. *See* 75 Pa.C.S.A. § 3731(a)(1). Prior to trial, appellee filed a motion to suppress statements that he made to police as well as the results of an "ABC" field sobriety test.[1] On September 9, 1987, a hearing was held on this motion. Thereafter, the suppression court issued its findings of fact and conclusions of law, and entered an order granting appellee's motion in part. The Commonwealth timely appealed from the suppression order.[2]

We begin with our standard of review. "[W]here the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983) (plurality opinion). *See also Commonwealth v. James*, 506 Pa. 526, 532–33, 486 A.2d 376, 379 (1985). Moreover, the reviewing court is "bound by the findings of a suppression court if those findings are supported by the record." *Commonwealth v. James, supra*, 506 Pa. at 533, 486 A.2d at 379 (citations omitted).

The Commonwealth does not dispute the suppression court's fact-findings. The relevant facts were summarized by the suppression court as follows:

(1) At approximately 2:55 A.M., the defendant's vehicle was stopped and he was subsequently placed under arrest for driving under the influence;

(2) Immediately prior to the arrest, he was advised of his Miranda rights and stated that he did not wish to make any statements;

1. The "ABC" field sobriety test is designed to determine whether a suspect is intoxicated by testing his or her ability to recite the alphabet.

2. We note that the Commonwealth, in its brief, has certified that "the suppression order which is the subject of this appeal substantially handicaps its prosecution." Brief for Appellant at 1. Accordingly, the appeal is properly before this Court. *See Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386–87 (1985).

(3) Subsequent to the stop of the defendant's vehicle and prior to the giving of the Miranda warnings, the defendant was asked if he had anything to drink, [and] he was administered field sobriety tests, included among them was the "A–B–C Test", [to] which the defendant first responded [that] he didn't know his A–N–Cs but then within seconds began to recite the alphabet....

Trial Court Opinion, September 9, 1987, at 1–2. The court ruled that both appellee's response to the officer's question whether he had been drinking, and his recitation of the alphabet (the "ABC test"), were inadmissible, and thus granted appellee's motion to the extent that it sought to suppress these statements.[3] *Id.* at 5.

In ordering the suppression of the statements, the suppression court relied on this Court's opinion in *Commonwealth v. Bruder,* 365 Pa.Super. 106, 528 A.2d 1385 (1987). In *Bruder,* the accused's car was stopped by a police officer, and he was asked for his license, registration, and insurance card. *Id.,* 365 Pa.Superior Ct. at 110, 528 A.2d at 1387. After complying with this request, the accused was asked, *inter alia,* whether he had been drinking. *Id.* He was then asked to recite the alphabet. *Id.* Prior to these inquiries, the accused had not been advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The *Bruder* court held that (1) Bruder's response to the officer's question whether he had been drinking "should have been excluded as a statement made during custodial interrogation without the benefit of *Miranda* warnings", and (2) Bruder's recitation of the alphabet was "essentially communicative in nature" and therefore should have been excluded because it too was elicited during custodial interrogation and before *Miranda*

---

**3.** Appellee also moved to suppress statements that he made (1) while being taken to the police cruiser, (2) while in the police cruiser on his way to the police station, and (3) while at the police station. The court ruled that these statements were not the product of custodial interrogation, but were volunteered by appellee. Trial Court Opinion, September 9, 1987, at 5–6. Appellee has not challenged this ruling.

warnings were given. *Id.* 365 Pa.Super. at 112, 113–14, 528 A.2d at 1388, 1388.

The Commonwealth does not dispute that *Bruder* is factually indistinguishable from the case at bar.[4] The Commonwealth nevertheless argues that *Bruder* was wrongly decided. More specifically, the Commonwealth maintains that

> the *Bruder* court erred in concluding that: 1) the roadside questioning of a defendant subsequent to the stop of his vehicle but prior to his arrest constitutes custodial interrogation for which Miranda warnings must be given; and 2) the performance of the A–B–C test is evidence of a testimonial nature for which Miranda warnings are required.

Brief for Appellant at 8. The Commonwealth therefore urges us not to follow either of the holdings of *Bruder*. We decline to do so for the following reasons.

Preliminarily, we note that "[u]ntil a decision of the superior court is overruled by the supreme court, that decision is the law of this Commonwealth." *Baker v. Aetna Cas. & Sur. Co.*, 309 Pa.Super. 81, 92, 454 A.2d 1092, 1098 (1982), *overruled on other grounds, Antanovich v. Allstate Ins. Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983) (en banc). *See also Yudacufski v. Commonwealth, Dept. of Transp.*, 499 Pa. 605, 612, 454 A.2d 923, 926 (1982). *Accord*

---

**4.** The evidence introduced at the suppression hearing established that appellee here, like the driver in *Bruder,* was stopped by a police officer and asked to produce his license and registration. N.T. September 9, 1987, at 7. Appellee complied with this direction, and was then asked whether he had been drinking. *Id.* at 7–8. A second officer then asked appellee to perform certain field sobriety tests, including the "ABC test", which involves recitation of the alphabet. *Id.* at 8, 22. As in *Bruder,* appellee was not advised of his *Miranda* rights prior to these inquiries. *Id.* at 8, 23.

We note that, at least with regard to the degree of suspicion possessed by the arresting officer *prior* to stopping the motorist, the instant case is *unlike Bruder.* In *Bruder,* the arresting officer saw the accused driving erratically, and witnessed him passing a red light. 365 Pa.Super. at 108, 528 A.2d at 1386. In the instant case, by contrast, the only suspicious circumstance observed by the officer prior to stopping appellee was the fact that appellee turned off his headlights. N.T. September 9, 1987 at 6.

*County of Armstrong v. Workmen's Comp. Appeal Bd.,* 81 Pa.Commw. 474, 478, 473 A.2d 755, 757 (1984) (Commonwealth Court is bound by stare decisis to follow own decisions until they are either overruled by Supreme Court or compelling circumstances persuade otherwise). This rule, of course, is not absolute; thus, in "compelling circumstances", a court may decide not to follow existing precedent. *Yudacufski v. Commonwealth, Dept. of Transp., supra.* As our Supreme Court noted in *Fadgen v. Lenkner,* 469 Pa. 272, 365 A.2d 147 (1976):

> [W]hile the principle of *stare decisis* is a wise course of judicial action, it is not an ironclad rule and is to be controlling only where applicable. So that, when it is determined that a past precedent is no longer in accord with modern realities, and the rationale justifying the old rule no longer finds support, then the pledge of certainty gives way "to new conditions and to the persuasion of superior reasoning." *Griffith v. United Airlines,* 416 Pa. 1, 23, 203 A.2d 796, 806 (1964)....

*Id.,* 469 Pa. at 282, 365 A.2d at 152.

 Here, the Commonwealth does not allege that, since the filing of *Bruder,* circumstances have changed so drastically that the reasoning underpinning the decision has been eroded, and thus the case "is no longer in accordance with modern realities." Nor does the Commonwealth suggest any other "compelling circumstance" that would warrant abandoning the approach set forth in *Bruder.* Instead, the Commonwealth merely argues that (1) with regard to the question whether appellee was in custody, we should follow the United States Supreme Court's conclusion in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and (2) we should conclude that evidence derived from an "ABC" test is demonstrative evidence, not testimonial evidence, and thus *Miranda* warnings need not be given before administering such a test. These precise arguments were considered and rejected by the *Bruder* Court. *See Commonwealth v. Bruder, supra,* 365 Pa.Super. at 111, 528 A.2d at 1387 (discussing *Berkemer*); *id.,*

365 Pa.Superior Ct. at 113–14, 528 A.2d at 1388 (discussing whether recitation of alphabet should be viewed as testimonial evidence as distinguished from demonstrative or physical evidence). Because the Commonwealth has failed to show in what respect the approach in *Bruder* has lost its vitality, or any other compelling circumstance that might undermine *Bruder's* precedential value, we decline its invitation not to follow that decision.

Moreover, we note that, even if we were to consider the Commonwealth's arguments regarding custody and the "ABC" test anew, we would conclude that *Bruder* was properly decided. First, with regard to determining when an accused is in custody for *Miranda* purposes, the *Bruder* Court correctly recognized that *Berkemer v. McCarty* "refused to adopt a bright line test", and thus "we are afforded a measure of flexibility in deciding exactly when a suspect has been taken into custody." *Commonwealth v. Bruder*, 365 Pa.Super. at 111, 528 A.2d at 1387 (citing *Berkemer v. McCarty*, 468 U.S. at 441, 104 S.Ct. at 3151). In exercising this flexibility, the *Bruder* Court employed the test for custodial interrogation that was approved by our Supreme Court in *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980). Under *Meyer*, "the test for custodial interrogation is whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Id.*, 488 Pa. at 307, 412 A.2d at 521 (alternative holding) (quoting *Commonwealth v. Brown*, 473 Pa. 562, 570, 375 A.2d 1260, 1264 (1977)). A close examination of *Meyer* reveals that our Supreme Court recognized that the Pennsylvania test, formulated above, provided greater protection than did the then-existing United States Supreme Court definition of custodial interrogation. *Id.*, 488 Pa. at 306, 412 A.2d at 521. Accordingly, the fact that the *conclusions* in *Bruder* and *Berkemer* are different reflects, at best, the reality that Pennsylvania courts have consciously defined custodial interrogation differently than federal courts. The Superior Court, of course, is "powerless to alter the decisional law of our supreme court." *See De-Francesco v. Western Penna. Water Co.*, 329 Pa.Super.

508, 520, 478 A.2d 1295, 1301 (1984) (en banc), and thus *Bruder* did no more than apply the law it was required to apply under state supreme court precedent.

Second, *Bruder's* conclusion that "the recitation of the alphabet [is] essentially communicative in nature", 365 Pa. Super. at 114, 528 A.2d at 1388, is supported by ample authority. For example, in *Commonwealth v. Fernandez,* 333 Pa.Super. 279, 482 A.2d 567 (1984), we noted that,

> The Fifth Amendment has consistently been held to exclude only evidence which is testimonial in nature. *United States v. Lamb,* 575 F.2d 1310 (10th Cir.), *cert. denied sub nom. Clary v. United States,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978). Testimonial evidence is *communicative evidence* as distinguished from demonstrative or physical evidence. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (*held,* extraction of blood is demonstrative physical evidence).

*Id.,* 333 Pa.Superior Ct. at 284, 482 A.2d at 569 (emphasis supplied). In determining whether evidence is "communicative", we are guided by the following analysis in *Schmerber:*

> [T]he [fifth amendment] privilege has never been given the full scope which the values it helps to protect suggest. History and a long line of authorities in lower courts have consistently limited its protections to situations in which the State seeks to submerge those values by obtaining the evidence against the accused through "the cruel, simple expedient of compelling it from his own mouth."...
>
> It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers.... On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, *to write or speak for identification,* to appear in court, to stand, to assume

a stance, to walk, or to make a particular gesture. *The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.* 384 U.S. at 762–64, 86 S.Ct. at 831–32 (citation and footnote omitted) (emphases supplied). *Schmerber* thus teaches that an accused may indeed be required to speak, without that speech being considered a "communication" for fifth amendment purposes, but only for purposes of *identification.* The limited nature of this exception was emphasized in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967):

We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. . . . *Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a "testimonial" nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt.*

*Id.* at 222–23, 87 S.Ct. at 1930 (emphasis supplied). *See also Gilbert v. California,* 388 U.S. 263, 266–67, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967) ("A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [fifth amendment] protection."). *See generally* W. LaFave & J. Israel, *Criminal Procedure* § 7.2(a), (b) (1984).

■ In light of these authorities, it is clear to us, as it was to the *Bruder* Court, that the recitation of the alphabet is "essentially communicative" in nature. The Commonwealth does not argue that the test is designed to *identify* the accused; indeed, it is difficult to imagine how the test helps to identify the accused at all. Instead, it is designed to gather incriminating evidence against the accused by

having the accused "speak his [or her] guilt", either through the *manner* in which the test is performed (for example, if the speech was slurred), or the accused's *ability* to perform it (for example, if the accused cannot recite the whole alphabet). Because requiring an accused to perform the "ABC" test produces evidence that is testimonial in nature, it follows that such evidence cannot be admitted unless it was obtained in compliance with *Miranda*.

For the foregoing reasons, we affirm the suppression order below.

Order affirmed.