547 A.2d 1223

**COMMONWEALTH of Pennsylvania**

v.

**Stuart THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Argued April 27, 1988.

Filed Sept. 19, 1988.

Jenny Steinen, Assistant Public Defender, Philadelphia, for appellant.

Stuart B. Suss, Assistant District Attorney, West Chester, for Com., appellee.

Before CAVANAUGH, WIEAND and DEL SOLE, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Chester County, sentencing the appellant to a thirty (30) day to twenty-three (23) month term of incarceration following his conviction for Driving Under the Influence of Alcohol. We reverse.

On the evening of August 3, 1986, Valley Forge Park Ranger John Bandurski observed the appellant run a stop sign within the confines of the park. He activated his emergency lights and siren and pursued the appellant until the latter brought his yellow sedan to a stop approximately one-quarter mile beyond the park limits. This area was within the boundaries of Tredyffrin Township. Ranger Bandurski then approached the appellant, who had exited

his vehicle, and noted that "[h]e had slurred speech and the smell of alcohol on his breath." After advising the appellant of his failure to stop at the traffic sign (an assertion which the appellant denied), Ranger Bandurski asked him to submit to a field sobriety test. Three such tests were administered, two of which the appellant failed. Ranger Bandurski then contacted his dispatcher in an effort to communicate with Tredyffrin Township as well as to secure assistance from an additional park ranger. Approximately two to five minutes thereafter, Ranger Paul Reilly and Tredyffrin Township Police Officer Stephen Dintino and his shift sergeant arrived at the scene. After being advised that the appellant might be intoxicated, Officer Dintino proceeded to administer his own sobriety tests. Based upon the results of the foregoing, the appellant was placed under arrest.[1] He was subsequently advised of his Miranda warnings and of the Pennsylvania Implied Consent provision in connection with a request that he submit to chemical testing of his blood. The appellant refused to comply, whereupon he was transported to the Tredyffrin Township police station and advised of the township policy regarding the video taping of persons arrested for Driving Under the Influence. Prior to taping, the appellant requested the assistance of a Public Defender. Accordingly, both the appellant and Officer Dintino attempted to contact the Chester County Public Defender by various methods but were unsuccessful in their efforts. Officer Dintino then proceeded to film the appellant as he performed a horizontal gaze nystagmus test and a walk and turn test. Prior to taping, the appellant was not advised of his Miranda rights a second time, but the warnings were administered during the course of the filming. Several months later at a preliminary hearing held on October 1, 1986, the appellant was held for court on the charge of Driving Under the Influence (75 Pa.C.S.A.

---

1. At trial, Officer Dintino testified that "[t]he defendant's eyes were red, glassy and bloodshot", that his speech was "slurred, mumbled", that "[h]e was ... obscene" and that his "balance was unstable as he walked and as he stood." The officer further detected an "odor of alcoholic beverage" on the appellant's breath.

§ 3731(a)).[2]  A pretrial suppression hearing was conducted on December 9–10, 1986, at the conclusion of which the hearing court denied the appellant's Motion to Quash the indictment on jurisdictional grounds.  Said hearing was continued until January 7, 1987, at which time the court denied the remaining Motion to Suppress concerning the videotape.[3]  At the conclusion of the jury trial on January 9, 1987, the appellant was convicted of Driving Under the Influence.  Following the denial of Post–Verdict Motions on July 14, 1987, the appellant was sentenced to a thirty (30) day to twenty-three (23) month term of incarceration and was further required to pay a fine in the amount of $1,500.00.[4]  This is an appeal from the judgment of sentence.

The following issues have been raised for our consideration:

Did the trial court err when he held that the extra-territorial arrest of the defendant by a federal park ranger was proper?

Did the court err when he ruled that the video tape of the defendant's third set of field test was admissible at trial?

While we find no merit in the appellant's first claim, a thorough review of the record and controlling authority leads us to the conclusion that the trial court erred in failing to suppress the videotape evidence.  Accordingly, we reverse the judgment below.

■ It is initially contended that the extraterritorial arrest was improper, insofar as Ranger Bandurski was with-

2.  The appellant was also held for court on a violation of 75 Pa.C.S.A. § 3323(b) (provision of the vehicle code imposing a duty to observe stop signs and yielding the right of way under specified conditions). The appellant was found guilty of this offense by the court on August 6, 1987.

3.  While the court noted at this time that the Motion to Quash remained open, the record reveals that said motion was disposed of on December 10, 1986.

4.  The appellant was also requested to pay the costs of prosecution and directed to submit himself to drug evaluation and treatment.  With respect to the conviction under 75 Pa.C.S.A. § 3323(b), the appellant was fined in the amount of $25.00 and ordered to pay costs.

out jurisdiction to detain the appellant beyond the boundaries of the federal park. While the appellant would characterize his detention as an arrest, it would appear from the record that the actual arrest was effectuated by Officer Dintino subsequent to the second set of field sobriety tests. Notwithstanding the foregoing, it is beyond peradventure that Ranger Bandurski was authorized to apprehend the appellant in the circumstances at bar.

Pursuant to 16 U.S.C.A. § 1a–6(a)(1):

§ 1a–6. Law enforcement personnel within National Park System

(A) Designation authority of Secretary; powers and duties of designees

In addition to any other authority conferred by law, *the Secretary of the Interior is authorized to designate, pursuant to standards described in regulations by the Secretary, certain officers or employees of the Department of the Interior who shall maintain law and order and protect persons and property within areas of the National Park System. In the performance of such duties, the officers or employees, so designated may—*

(1) *carry firearms and make arrests without warrant for any offense against the United States committed in his presence,* or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed or is committing such felony, *provided such arrests occur within that system or the person to be arrested is fleeing therefrom to avoid arrest;*

(emphasis added.)

According to the testimony elicited at trial, Ranger Bandurski observed the appellant run a stop sign within the confines of Valley Forge Park. He thereafter pursued the appellant until the latter brought his vehicle to a stop beyond park limits. We agree with the lower court that while Ranger Bandurski is without jurisdiction to effectuate an arrest in Tredyffrin Township, "the point of arrest should be determined to be the location where [the ranger]

indicated his intent to stop [the appellant] not where [the appellant] actually chose to stop ..." Had the detention occurred on park property, there would be no question that Ranger Bandurski would have been entitled to arrest the appellant. Thus, the process of arrest was "set in motion" within park limits (i.e., within Ranger Bandurski's jurisdiction) and the fact that the process terminated beyond those limits (due solely to the appellant's actions) is irrelevant. As this court noted in *Commonwealth v. Garner*, 314 Pa.Super. 566, 461 A.2d 302 (1983), "Any police officer of any political subdivision may arrest any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense." *Id.*, 314 Pa.Superior Ct. at 569–570, 461 A.2d at 304 (*citing* 42 Pa.C.S.A. § 8901). Section 8901, repealed in 1982, has been replaced by 42 Pa.C.S.A. § 8953 which provides in pertinent part:

§ 8953. Statewide municipal police jurisdiction

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

\* \* \* \* \* \*

(2) *Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.*

(emphasis added.)

It is obvious that Ranger Bandurski was in "hot pursuit" of the appellant as evidenced by the circumstances of the case.

Moreover, even though the foregoing discussion focuses upon Pennsylvania (as opposed to federal) law, the rationale behind the Commonwealth statutes is identical to that which underlies 16 U.S.C.A. § 1a–6. Accordingly, we find no merit in the claim that Ranger Bandurski was without legal authority to apprehend the appellant.

The appellant next challenges the lower court's failure to suppress the videotape of his third set of sobriety tests. The appellant has framed this claim in both fifth and sixth amendment terms. We conclude that the appellant's fifth amendment and sixth amendment rights were violated.

It is well settled that field sobriety tests do not, in and of themselves, implicate the fifth amendment. As we observed in *Commonwealth v. Romesburg*, 353 Pa.Super. 215, 509 A.2d 413 (1986), "Field sobriety tests do not elicit testimonial or communicative evidence and, thus, do not trigger fifth amendment protection." *Id.*, 353 Pa.Superior Ct. at 218, 509 A.2d at 415. However, a recent line of cases has carved out an exception to this rule. Where the administration of a sobriety test results in the production of testimonial or communicative evidence, and where the test subject was compelled to supply this evidence, the fifth amendment protections apply. In *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987), this court held that forcing a defendant to recite the alphabet while he was under suspicion for intoxication yielded evidence that was "essentially communicative in nature." *Id.*, 365 Pa.Superior Ct. at 114, 528 A.2d at 1388. More recently, in *Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 (1987), we relied upon the *Bruder* analysis in concluding that the audio portion of a videotape of the defendant's field sobriety performance should have been suppressed. In that case, the subject was filmed while attempting to execute the directional instructions of the arresting officer. The officer explained each test to the defendant and asked whether he had understood what was required of him. In response to this questioning, the defendant either asked for clarification

or indicated what he perceived the requirements to be. The *Conway* court noted that:

> The test procedure was structured so that Mr. Conway was compelled to reveal his thought processes by asking for clarification of some of the officer's instructions, and his statements in response thereto manifest his confusion. Because confusion is arguably a sign of intoxication, Mr. Conway was forced to incriminate himself by 'communicating' his confusion while performing the tests.

*Id.*, 368 Pa.Superior Ct. at 498, 534 A.2d at 546.

█ In the case at bar, the appellant was forced to undergo filmed sobriety exercises. The transcript of the audio portion of the performance reveals that the subject was obscene and uncooperative, and that he repeatedly commented upon the absence of legal representation. While his statements were not responsive to direct interrogation, as in the case of *Conway, supra,* we are nonetheless convinced that the appellant was compelled by circumstances to utter them. Arguably, obscenity and belligerence are just as indicative of an individual's thought processes as is confusion. In both instances, the individual is exhibiting a lack of control, and a jury could reasonably conclude that this manifests some level of intoxication. For the above reasons, we find *Conway* to be controlling in the case *sub judice.* Since the appellant was compelled to incriminate himself in a testimonial or communicative manner, his fifth amendment rights were abridged by Officer Dintino's failure to administer Miranda warnings immediately prior to the taping.

It is clear from the record that defense counsel acquiesced in presenting the video *and* audio portions of the tape to the jury for tactical reasons. On the audio, the appellant can be heard demanding an attorney. Cognizant of the fact that he could not comment upon these requests, the Commonwealth's attorney suggested that the sound be turned off when the tape was presented to the jury. As the appellant notes in his brief, this placed defense counsel in "the untenable position of having to decide between two

undesirable strategies:" either allowing the jury to hear the appellant's comments and thereby give credence to the claim that he was rightfully annoyed at his treatment, or simply permitting the jury to view his "angry and frustrated gestures and responses" with no evidence of the audio commands which elicited such responses. Accordingly, counsel agreed that the entire tape should be played at trial. The following exchange occurred prior to the presentation of the videotape:

THE COURT: I want a waiver on the record with regard to his invoking his right to have counsel.

MS. SMITH [defense counsel]: My client has agreed to waive this particular right.

However, I would like the record to show that we don't— in the process, we are not waiving the original argument which we made about all of this.

If it's going to come in, we will waive that right.

MR. HALL [assistant district attorney]: Well, I would like the record to reflect that after the suppression hearing, it was the Commonwealth's opinion that the sound should be turned off of the video and would have done so but for the trial tactic of the defense attorney.

THE COURT: Okay. Let me know when you are ready.

■ In light of the above, it is fairly obvious that counsel was preserving her original objections to the tape with the exception of those portions where the appellant invoked his right to counsel. Therefore, the Commonwealth's contention that the appellant waived his right to challenge the videotape since his attorney agreed that it could be presented to the jury is without merit.

■ In *Commonwealth v. Waggoner*, 373 Pa.Super. 23, 540 A.2d 280 (1988), the defendant was taped while reenacting sobriety tests that he had earlier performed. During the course of the taping, he was advised of his *Miranda* warnings and responded to inquiries regarding his comprehension of those warnings. He also made various other comments before taping was completed. This court held that "[the defendant's] verbalizations during the videotap-

ing must be suppressed unless he made a voluntary, knowing and intelligent waiver of his rights after receiving his *Miranda* warnings." *Waggoner, supra*, 373 Pa.Superior Ct. at 30–31, 540 A.2d at 284. In the case *sub judice*, the appellant was also advised of his rights *during the course* of the videotape session but, far from waiving those rights, it appears that he continually objected to the absence of counsel. Accordingly, we find *Waggoner* to be directly on point.

In light of the holding in *Waggoner, supra*, we conclude that appellant's sixth amendment rights were violated. The police continued to interrogate appellant after he repeatedly requested counsel. Because appellant had been arrested prior to the videotaping, his right to counsel had attached. This failure to supply counsel warrants the suppression of the videotape.

Having found that the appellant's fifth amendment rights were violated by Officer Dintino's failure to administer Miranda warnings prior to filming his test performance, we conclude that the lower court erred in refusing to suppress the tape evidence. Moreover, the lower court erred in refusing to suppress the tape as appellant's right to counsel had clearly been violated. Accordingly, we reverse the judgment below.

Reversed and remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

I agree with the majority that the park ranger had jurisdiction to arrest appellant for driving while under the influence of alcohol. However, I disagree with the decision to award a new trial.

In my judgment, *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987) and *Commonwealth v. Peth*, 374 Pa.Super. 265, 542 A.2d 1015 (1988), as well as *Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541

(1987) and *Commonwealth v. Waggoner,* 373 Pa.Super. 23, 540 A.2d 280 (1988), were incorrectly decided. Evidence that a defendant is unable to recite the alphabet and video-taped evidence of a D.U.I. defendant's conduct are demonstrative evidence, not communicative. To suggest otherwise is wholly unrealistic. In the instant case, therefore, I would hold that the videotaped evidence of appellant's attempted execution of the arresting officer's directional instructions was not testimonial or communicative and did not implicate fifth or sixth amendment rights.

I would affirm the judgment of sentence.