STATE of South Dakota, Plaintiff and Appellant,

v.

Delmas MEEK, Defendant and Appellee.

No. 16253.

Supreme Court of South Dakota.

Argued Jan. 11, 1989.

Reassigned April 19, 1989.

Decided July 19, 1989.

---

Jeffrey P. Hallem, Asst. Atty. Gen.; Roger A. Tellinghuisen, Atty. Gen., on brief, Pierre, for plaintiff and appellant.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee.

MILLER, Justice (on reassignment).

In this intermediate appeal we reverse the trial court, reiterating our prior holdings that field sobriety tests are not protected by the constitutional privilege against self-incrimination.

## FACTS

In the early morning hours of March 5, 1988, Highway Patrolman Randy Hofeldt observed Delmas Meek's vehicle weaving between the lanes of U.S. Highway 14 in Hyde County, South Dakota. Officer Hofeldt stopped Meek's vehicle. He approached the vehicle and observed that Meek had blood-shot and glassy eyes, a flushed face and slurred speech. Hofeldt also detected a strong odor of alcohol and observed that Meek was unsteady on his feet and had difficulty walking.

In the patrol car, Hofeldt requested Meek to perform certain field sobriety tests. A recorded cassette of the conversation reveals that Meek initially refused to perform the tests, asserting his Fifth Amendment right against self-incrimination.

Hofeldt: OK. It does appear that you've been drinking quite a little tonight. I'm going to ask you to do some sobriety tests. The first thing I would like you to do is just to recite the alphabet start with A and go through Z. Can you do that for me?

Meek: I'll tell you what. Are you charging me?

Hofeldt: Charging you with what?

Meek: What?

Hofeldt: No. I'm not charging with anything. I'm just asking you to do some sobriety tests for me.

Meek: I'll be very honest with you. I won't do anything.

Hofeldt: You won't do nothing?

Meek: No. I plead the Fifth Amendment.

Hofeldt: Well, Sir. You know, I think it would probably be to your advantage to try to do some tests for me. Uh. You know? Would you try to recite the alphabet for me?

Following Officer Hofeldt's statement, Meek attempted three different sobriety tests which Hofeldt asked him to perform. Each test required verbal responses by Meek. He had difficulty with each. Hofeldt also attempted to administer a fourth test, a gaze nystagmus test. However, a dispute arose whether Meek's eyes were following the pen held by Hofeldt. Hofeldt then asked Meek to take a breathalyzer test. Meek refused.

Meek: I won't. Already said I pled the Fifth Amendment.

Hofeldt: Well, you know we've got along pretty good so far and I think we can continue to get along can't we?

Meek: Yah but I won't.

Hofeldt: Just blow a breath through there for me and we'll be done.

Meek: No we won't.

Hofeldt: You won't blow through the breath tester?

Meek: No.

Hofeldt: It's just a preliminary—just a pass or fail test like we did, just like the ones we've already done. Will you blow through it for me?

Meek: No I won't.

Hofeldt: OK. Well I am placing you under arrest for DWI as a result of your driving and your other sobriety tests that you did. That—it appears that you are very much under the influence of alcohol.

Meek was charged with driving while under the influence of alcohol under SDCL 32–23–1. He filed a motion to suppress the cassette tape of the conversation between Meek and Hofeldt, all of Meek's statements after he asserted his privilege against self-incrimination, and all testimony concerning field sobriety tests or other statements made by Meek after he had asserted his right against self-incrimination. Following a hearing, the trial court suppressed all

testimony concerning Meek's assertion of his privilege against self-incrimination and all statements made by him thereafter, including the verbal responses to the sobriety tests administered to him. The court specifically found that the responses to the verbal sobriety tests were testimonial and protected by the privilege against self-incrimination. The court did not suppress testimony concerning the gaze nystagmus test or the officer's observations concerning Meek's physical characteristics.[1] We accepted intermediate appeal and reverse and remand.

### ISSUE

WHETHER FIELD SOBRIETY TESTS ARE PROTECTED BY THE PRIVILEGE AGAINST SELF–INCRIMINATION.

### DECISION

The privilege against self-incrimination is granted by both the state and federal constitutions. Article VI, Section 9 of the South Dakota Constitution provides: "No person shall be *compelled* in any criminal case to give evidence against himself...." (Emphasis added.) The Fifth Amendment to the United States Constitution provides: "No person ... shall be *compelled,* in any criminal case, to be a witness against himself...." (Emphasis added.)

■ Meek, a layman, presumably did not realize and the trial court failed to recognize or fully appreciate that *field sobriety tests are not protected by the constitutional privilege against self-incrimination. State v. Hoenscheid,* 374 N.W.2d 128 (S.D.1985) and *State v. Roadifer,* 346 N.W.2d 438 (S.D.1984). As Justice Morgan, writing for the majority in *Roadifer,* so clearly stated:

> *Dexterity tests* are real physical evidence and *are not protected by the constitutional privilege against self-incrimina-*

1. Meek has not appealed this ruling by the trial court.

2. The trial court specifically suppressed an alphabet test, a test by which Meek was to count backwards, and a test for digital control in which Meek was to touch various fingers with his thumb while audibly counting.

*tion.* (Citation omitted.) These tests are based on the loss of coordination, balance and dexterity that results from intoxication, they do not force the subject to betray his subjective knowledge of the crime through communication or testimony. These tests merely compel the suspect to demonstrate his physical characteristics and condition at that time as a source of real or physical evidence to which observers may testify. (Emphasis added.)

346 N.W.2d at 440.

Additionally, in *Roadifer,* this court clearly stated that audio tapes that merely show the manner of the defendant's attempt to count backwards or recite the alphabet as requested are admissible. *Id.* at 441; *see also Hoenscheid,* 374 N.W.2d at 130.

■ Therefore, under the settled law of this state, the trial court erred in suppressing the results of any dexterity or verbal sobriety tests,[2] but could and should suppress any evidence relating to any conversations or statements made by Meek after he asserted his Fifth Amendment right. The trial court further erred in suppressing those parts of the tape specifically relating to the field sobriety tests.[3]

Lastly, much is made of Hofeldt's claimed coercion or deceit in obtaining the sobriety tests. From reading the transcript and listening to the tape, we cannot blindly accept the bad faith assertion. The claimed coercion or deceit flows from Hofeldt's statement that "it would probably be to (Meek's) advantage to try to do some of the tests...." Although we do not condone that statement, it is truthful because: (1) Meek could perhaps pass some or all of the tests or (2) his refusal to perform them is admissible and could be viewed negative-

3. We appreciate that editing the tape may be a most difficult and impractical task; however, that problem is best left to those who need to do the editing.

ly by a fact-finder at trial. *Hoenscheid, supra.*

Reversed and remanded to the trial court with directions that it proceed as herein provided.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

I respectfully dissent. The pattern of voting in this dissent now advanced is exemplified by the rationale and authorities in *State v. Hoenscheid*, 374 N.W.2d 128, 132–3 (S.D.1985) (Henderson, J., concurring in part, dissenting in part), and *State v. Neville* (Neville II), 346 N.W.2d 425, 432–3 (S.D.1984) (Henderson, J., concurring in part, dissenting in part). In *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the United States Supreme Court observed that each state may grant greater protection under its own constitution than is provided by the federal constitution. *See, also, State v. Opperman* (Opperman II), 247 N.W.2d 673 (S.D. 1976) (search and seizure).* Here, such additional protection is mandated by the language of South Dakota Constitution, Art. VI, § 9, which provides, in pertinent part: "No person shall be *compelled* in any criminal case *to give evidence against himself* ...". This wording is substantively different than its federal counterpart, the Fifth Amendment to the United States Constitution, which protects against compulsion of a person "to be a witness against himself." Even under the narrower wording of the federal constitution, an underlying principle in the enforcement of our criminal law is that ours is an accusatorial, not an inquisitorial, system. *Rogers v. Richmond*, 365 U.S. 534, 541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760, 766 (1961). Here, our state highways are being converted into fields of inquisitorial activity.

The majority opinion asserts, at p. 50, relying on *State v. Roadifer*, 346 N.W.2d 438 (S.D.1984), that oral field sobriety tests and audio tapes thereof are admissible. This is incorrect, *Roadifer* notwithstanding. Field sobriety tests involving recitation of the alphabet while .one is under suspicion for intoxication yields evidence which is "essentially communicative in nature" *Commonwealth v. Thompson*, 377 Pa.Super. 598, 605, 547 A.2d 1223, 1227 (1988) (quoting *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385, 1388 (1987). Similarly, the audio portion of a videotape of a defendant's field sobriety test is to be suppressed on Fifth Amendment grounds. *See, Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 (1987). Interestingly, Pennsylvania's state constitution's self-incrimination provision tracks the wording of the federal constitution, not South Dakota's broader protection. Under this State's constitution, *evidence* provided by the defendant is the focus, not function as a witness, which is all the more reason to suppress the evidence at hand.

Further, Meek was cajoled into taking the tests, an indication that his efforts were involuntary; note the majority opinion wherein police officer is quoted saying that it would be to Meek's "advantage to try to do some tests ...", in other words, to incriminate himself. *See, Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The purpose of the officer's actions, here, were to elicit incriminating responses, i.e., to gather incriminating evidence. Meek was, consequently, under the functional equivalent of interrogation, as defined in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

The circumstances of this case warranted suppression. The majority's reversal of the trial court is but one more in a series of cases which have chipped away constitutional protections for South Dakotans.

Erosions of liberty do not come in giant leaps, they come in miniscule encroachments often hidden to the trained and educated mind. Like a thief in the night, language can steal a liberty deeply in-

---

* Opperman II was modified, on other grounds, in

*State v. Flittie*, 425 N.W.2d 1 (S.D.1988).

grained in the fabric of the American way of life. I am afraid of each little encroachment on the liberty of my fellow Americans on the highway.

*State v. Anderson,* 331 N.W.2d 568, 573 (S.D.1983) (Henderson, J., concurring in result). Here, the long-standing right against self-incrimination is being gradually eroded.

SABERS, Justice (dissenting).

The fatal defect in the majority opinion readily appears in the too narrow statement of the issue. The correct question presented is:

WHETHER A CLAIM OF THE PRIVILEGE AGAINST SELF–INCRIMINATION IS EQUAL TO AN ABSOLUTE REFUSAL TO PERFORM TESTS.

This question is one of first impression in South Dakota. Our holding should be:

WHEN A PERSON IS SUBJECT TO COMPULSION AND NOT FREE TO LEAVE, AND CLAIMS HIS CONSTITUTIONAL RIGHT AGAINST SELF–INCRIMINATION, HE CANNOT BE COMPELLED TO GIVE EVIDENCE UNIQUELY WITHIN HIS CONTROL. FIELD SOBRIETY TESTS, WHETHER VERBAL OR NON–VERBAL, ARE UNIQUELY WITHIN THE CONTROL OF THE PERSON TO PERFORM OR NOT PERFORM.

The privilege against self-incrimination is recognized in both the state and federal constitutions. Article VI, Section 9 of the South Dakota Constitution provides: "No person shall be *compelled* in any criminal case to give evidence against himself...." (emphasis added). The Fifth Amendment to the United States Constitution provides: "No person ... shall be *compelled,* in any criminal case, to be a witness against himself...." (emphasis added). The prohibition in both constitutions is against compulsion by the state in a criminal case.

The United States Supreme Court in *Miranda v. State of Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694, 715 (1966), recognized the danger of improperly compelled evidence and prohibited its use against a defendant in a criminal case:

[O]ur accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth.

This court has addressed improper coercion by the state following the assertion of a right guaranteed by *Miranda.* In *State v. Cody,* 293 N.W.2d 440 (S.D.1980), the defendant was informed of his *Miranda* rights prior to his questioning by a DCI agent. The defendant requested an attorney several times during the questioning, but the questioning continued. This court reversed his conviction, holding that the questioning should have ceased after the defendant requested an attorney. *Cody* held that the defendant did not waive his rights under *Miranda* by continuing to answer questions after he had asserted the right. The state has a heavy burden to demonstrate a person has waived the privilege against self-incrimination. *Satter v. Solem,* 434 N.W.2d 725 (S.D.1989), *cert. denied,* — U.S. —, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989); *Cody, supra.*

Since *Miranda,* the Supreme Court has consistently held that the use of "physical or moral compulsion" on a person asserting a Fifth Amendment right is prohibited. *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (*Neville I*); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). In *Neville I,* the Court found that a DWI suspect's refusal to take a blood test was not compelled, as a suspect was given the *choice* between taking the test or refusing the test and suffering the statutory penalties for refusal. The Court stated:

Here the State did not directly compel respondent to refuse the test, for it gave him the choice of submitting to the test or refusing.

.    .    .    .    .

... Nor is this a case where the State has *subtly coerced respondent into*

*choosing the option it had no right to compel,* rather than offering a true choice. (emphasis added).

*Id.,* 459 U.S. at 562–64, 103 S.Ct. at 922, 74 L.Ed.2d at 758–9.

On remand from the Supreme Court, we also discussed the question of moral compulsion in *State v. Neville,* 346 N.W.2d 425 (S.D.1984) *(overruled on other grounds* by *State v. Hoenscheid,* 374 N.W.2d 128 (S.D. 1985)) *(Neville II ).* *Neville II* states that moral compulsion is exerted where the state improperly attaches a penalty, punishment or detriment on an individual's particular course of action. "If a defendant produces self-incriminating evidence to escape unwarranted consequences, that evidence is considered compelled and thus constitutionally inadmissible." *Id.* at 429 *(citing People v. Thomas,* 46 N.Y.2d 100, 412 N.Y.S.2d 845, 385 N.E.2d 584 (1978)).

These cases protect defendants in criminal cases who have asserted or not clearly waived the privilege against self-incrimination. However, these cases differ from Meek's in that each involves either of two situations. One is where the state has informed or failed to inform a suspect of his *Miranda* rights during a custodial interrogation. The other is where a person has asserted the privilege to avoid testifying. In this case, no *Miranda* warnings were necessary and Meek did not assert the privilege to avoid testifying. Instead, Meek asserted the privilege [1] in a situation where he was not free to leave and was then inveigled and compelled by Officer Hofeldt to give incriminating evidence [2] uniquely within his control.

As indicated above, this is a case of first impression in South Dakota. We should base our decision on the independent state grounds of S.D. Const. art. VI, § 9 [3] and on the Fifth Amendment to the United States Constitution and *Miranda.*

The State raises two arguments in support of its claim that the trial court improperly suppressed the evidence in question. First, the State claims that the field sobriety tests were administered while Meek was being questioned pursuant to a routine traffic stop, and was not under custodial interrogation. State argues that the privilege against self-incrimination does not apply where an individual is not in custody. The State cites *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Hoenscheid, supra;* and *State v. Hall,* 353 N.W.2d 37 (S.D.1984), to support this claim.

In *Berkemer,* the Court recognized that any traffic stop curtails "freedom of action," but held that under the circumstances of the roadside stop in *Berkemer* the defendant was not in custody for purposes of a *Miranda* warning. However, *Berkemer* refused to set out a bright line rule that a suspect need not be advised of his rights until he is formally placed under arrest.

If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda.*

*Id.,* 468 U.S. at 440, 104 S.Ct. at 3150, 82 L.Ed.2d at 335.

Unlike *Berkemer,* Meek does not claim that Officer Hofeldt failed to inform him of his *Miranda* rights. Rather, he argues that he specifically asserted his privilege

---

1. Defense counsel points out the irony of the situation:

    Some minutes after Defendant had attempted, on three occasions, to assert his privilege against self-incrimination, Officer Hofeldt formally placed the Defendant under arrest and then, ironically, informed Mr. Meek that he had certain rights, including the right against self-incrimination.

2. During one of the sobriety tests, Meek admitted his nervousness and his belief that there was reason to be nervous.

3. The State argues that *Hoenscheid* and *Neville II* hold that the privilege against self-incrimination, under our state constitution, is no broader than under the federal constitution. However, the language of our state constitution differs and the prohibition against compelled evidence is stronger. In addition, neither *Hoenscheid* nor *Neville II* involved the compulsion of evidence following the specific assertion of the privilege against self-incrimination, as here. *See supra* at p. 51–52.

against self-incrimination while he was not free to leave Officer Hofeldt's vehicle, and that Officer Hofeldt then inveigled and compelled him to give incriminating evidence.

This court addressed the question of when a routine traffic stop rises to the level of a custodial interrogation in *Hoenscheid* and *Hall*. In both *Hoenscheid* and *Hall*, the court held that a DWI suspect was not entitled to *Miranda* warnings because there was no custodial interrogation. Neither case involved a specific assertion of the privilege against self-incrimination followed by statements by the officer aimed at coercing incriminating evidence from the suspect. Further, neither involved a suspect being detained in the officer's vehicle. Although these circumstances may indicate Meek was "in custody," we need not base our decision on that determination. The privilege against self-incrimination applies in diverse situations even though the potential defendant is not entitled to be informed of his *Miranda* warnings. 3 *Whartons Criminal Procedure*, § 394–96 (12th ed. 1975). In other words, even though the State was not required to inform Meek of his rights under *Miranda*, he retained the right to remain silent and not incriminate himself.

The State also claims that the verbal sobriety tests were non-testimonial evidence and not within the reach of the privilege against self-incrimination. The Supreme Court has held that the federal constitutional right against self-incrimination applies only to testimonial or communicative evidence. *Schmerber v. State of California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Non-testimonial or real evidence is not protected by the right against self-incrimination. *Neville I, supra; Schmerber, supra*. This distinction is based on the language of the Fifth Amendment which protects an individual from being compelled "to be a witness against himself." The Court acknowledged difficulty in determining this question and

stated that "a distinction is not readily drawn." [4] *Schmerber, supra*, 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916; *Neville I, supra.*

Despite the broader language of the South Dakota Constitution, which by its terms protects against the compulsion of *any* evidence, this court has also distinguished between testimonial and non-testimonial evidence under the South Dakota Constitution. *Hoenscheid, supra; Neville II, supra; State v. Roadifer*, 346 N.W.2d 438 (S.D.1984); *State v. Maher*, 272 N.W.2d 797 (S.D.1978). The State and the majority opinion argue that this case is controlled by *Hoenscheid* and *Roadifer*, which state that sobriety tests are real physical evidence and not protected by the privilege against self-incrimination.

The State and the majority fail to recognize the distinction between this case and *Hoenscheid* and *Roadifer*. Meek specifically asserted his privilege against self-incrimination. Officer Hofeldt then coerced Meek into incriminating himself by misleading him to believe it would be to his "advantage." As found by the trial court: "the purpose for seeking those field sobriety tests was to obtain further evidence against defendant and not for any purpose which would be beneficial to Meek." This is exactly the type of coercion which our state and federal constitutions prohibit. We have specifically rejected the argument that the "use of the rubber hose, icy showers or marathon interrogations" is necessary to create a presumption of compulsion. *Satter, supra*, at 728. The distinction between testimonial and non-testimonial evidence is inadequate under these circumstances.

When a person is subject to compulsion and not free to leave, and claims his constitutional right against self-incrimination, he cannot be compelled to give evidence uniquely within his control. Field sobriety tests, whether verbal or non-verbal, are uniquely within the control of the person to

---

**4.** This difficulty can be seen in *Neville I*, where the Supreme Court avoided the question of whether the verbal refusal to take a blood test was testimonial evidence. The Court asserted that the line between testimonial and non-testimonial evidence was difficult to draw, and instead rested its decision upon the determination that there was no coercion.

perform or not perform. This is evidence from a person's mind and heart. Accordingly, the State may not coerce a defendant to give such evidence after the specific assertion of the privilege against self-incrimination. Meek's assertion of the privilege in this case was the equivalent of refusing to perform the tests.

This rule would not prohibit the State from using real or physical evidence, such as fingerprints, photographs, measurements, appearance, hair, stance, body position, blood samples, and other physical evidence. *Roadifer, supra.* Nor would the rule prohibit officers or witnesses from testifying as to their observations of defendant's appearance, speech, demeanor or other observations that may be taken from him without his consciousness or cooperation. Likewise, under proper circumstances, a court can clearly require a defendant to submit to voice prints, writing samples, gesturing or other tests which require his cooperation.

To permit the State to coerce or deceive a person into incriminating oneself after asserting the privilege is improper under the South Dakota Constitution, which prohibits the use of "compelled evidence." This proposed holding is in line with *Schmerber*, which first created the distinction between testimonial and non-testimonial evidence. *Schmerber* states:

> To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege "is as broad as the mischief against which it seeks to guard[.]" (citation omitted).

*Id.*, 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916.

The trial court was also correct in excluding testimony concerning Meek's assertion of this constitutional right. *See Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). This situation is distinguished from both *Hoenscheid* and *Neville II* where the court held the *refusal* to provide non-testimonial evidence did not violate the privilege against self-incrimination. The refusals in *Hoenscheid* and *Neville II* did not involve assertion of a protected constitutional right.

We should affirm the trial court's suppression of all testimony concerning Meek's assertion of his right against self-incrimination and all statements made by Meek to Officer Hofeldt subsequent thereto, including the three verbal sobriety tests.

